480 So.2d 1095 (1985)
Gary Allen NASH
v.
DAMSON OIL CORPORATION.
No. 55067.
Supreme Court of Mississippi.
November 6, 1985.
Rehearing Denied January 15, 1986.
*1096 Stanford Young, David Slaughter, Waynesboro, for appellant.
Thomas W. Tyner, Joseph W. Hurston, H. Alex Brinkley, Aultman, Tyner, McNeese, Weathers & Gunn, Hattiesburg, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:
This case arises out of the efforts of an operating lessee under an oil and gas lease to fit itself within the suit we tailored in Doubleday v. Boyd Construction Company, 418 So.2d 823 (Miss. 1982) and thus avoid common law tort liability to an injured worker employed by a service and repair contractor. Keeping the necessary bodily contortions disguised, the lessee convinced the trial court of the fit and obtained summary judgment in its favor. As tailors of the Doubleday suit, we recognize that it was made for another occupying a different station in life. We reverse and remand.

II.

A.
Damson Oil Corporation, a Delaware corporation, is qualified to do and is doing business in the State of Mississippi. At all pertinent times Damson was the lessee of the producing unit in the Sabine No. 4-A oil well located in the northeast quarter of the southeast quarter of Section 21 and the northwest quarter of the southwest quarter of Section 22, Township 7 North, Range 7 West, Wayne County, Mississippi.
On March 16, 1978, Damson Oil entered into a Master Service Contract with Trigger Contractors, Inc., an independent contractor doing business in Wayne County, Mississippi. The contract called for Trigger's performance of "certain work with respect to oil or gas wells, as well as any other services" which Damson Oil might require from time to time or until the contract be cancelled. Of relevance to the case at bar, the contract provided:
MASTER SERVICE CONTRACT
* * * * * *
III.
It is expressly understood and agreed that all work to be performed by Contractor [Trigger] for Company [Damson Oil] shall be and is an independent contractor, Company being interested in the results obtained; Company shall have no direction or control of the Contractor or its employees and agents except in the results to be obtained. The work contemplated herein shall meet the approval of Company, and be subject to the general right of inspection for Company to secure the satisfactory completion thereof. The actual performance and superintendence of all work hereunder shall be by Contractor, but company or its representatives shall have unlimited access to the operations to determine whether such work is being performed by contractor in accordance with all the provisions of this Contract and the work order, or other written contracts if any. Contractor shall be entirely responsible for its own acts and the acts of its employees and agents while engaged in the work to be *1097 performed for Company, and in no instance shall Contractor or its employees or agents act as the agent or employee of Company.
* * * * * *
XI.
At any and all times during the term of this Agreement, Contractor agrees to carry insurance of the types and in the minimum amounts as provided for in Articles 1 through 7 of the Certificate of Insurance, [including workers' compensation insurance], a copy of which is attached hereto and made a part hereof. Contractor shall, upon request, furnish Company with certified copies of all policies. Prior to commencement of work hereunder, Contractor shall furnish Company with certificates showing its current insurance coverage and shall update them as required to keep them current so long as this Agreement is in effect.
XII.
All such policies shall be carried in a company or companies acceptable to Company, and shall be maintained in full force and effect during the term of this Agreement, and shall not be cancelled, altered or amended without ten (10) days prior written notice having been furnished to Company. All insurance policies of Contractor, whether specifically mentioned above or not, shall be endorsed to waive subrogation against Company, and against all parties endorsed to waive subrogation against Company, and against all parties for whom Company may be working with the exception of state statutory workmen's compensation insurance, but including all insurance carried by Contractor protecting against loss of, or damage to, its property and equipment employed in the performance of any work order issued hereunder.
XIII.
Company shall be named as an additional insured under all policies in force and effect pursuant to the listings and requirements of the Certificates of Insurance attached hereto.
XIV.
In order to eliminate controversies between Contractor, and Subcontractors and Company and its joint owners, if any, and their respective insurers, Contractor agrees to indemnify and hold harmless Company and any or all "Partners" of Company who wholly or partially bear the cost of operations hereunder, ... . [Emphasis added]
Having reference to Paragraph XI above, one of the types of coverage provided for in Articles 1 through 7 of the certificate of insurance was workers' compensation insurance. Pursuant thereto, Trigger had procured from the Travelers Insurance Company, Policy No. UB-976E700-79 to afford workers' compensation insurance coverage to its employees. This policy was in effect prior to and subsequent to the date of the accident in question.
On or about March 3, 1980, pursuant to the provisions of the Master Service Contract, Trigger was installing a flow line and hook up to Sabine No. 4-A oil well. The installation of this flow line involves the placing of a check valve along the line to prevent the back flow of oil and/or water into the well. Gary Allen Nash, Plaintiff below and Appellant here, alleges that W.L. Trigg, an employee of Damson Oil instructed Wayne Cooley on how to install the check valve. These instructions, we are told, resulted in the valve being placed backwards. Trigg then advised Nash to tighten a stuffing box seal on the pumping unit where the valve had been installed. As Nash was tightening the stuffing box, the valve blew out and hit him in the right eye causing severe injury.

B.
Gary Allen Nash has been afforded compensation by his employer Trigger Contractors, Inc., and its carrier, Travelers Insurance Company. Thirty-three months later, *1098 however, on December 20, 1982, Nash commenced this action by filing his complaint in the Circuit Court of Wayne County, Mississippi. Nash named Damson Oil Corporation, Appellee here, as sole Defendant below and asserted that Damson was "any other party" within the compensation act, Miss. Code Ann. § 71-3-71 (1972) against whom his common law action for personal injuries was preserved. Nash charged negligence, as described above. Damson, of course, responded with a denial and the assertion of various defenses.
On April 20, 1983, Damson filed a motion to dismiss or, in the alternative, for summary judgment. See Rule 12(b)(6) and 56, Miss.R.Civ.P. As grounds therefor, Damson asserted that it was an employer within the meaning and contemplation of the Mississippi Workers' Compensation Act as construed in Doubleday v. Boyd Construction Co., 418 So.2d 823 (Miss. 1982), and that Nash's exclusive remedy was compensation, Miss. Code Ann. § 71-3-9 (1972), payment of which Trigger had already secured. Being of the opinion that Doubleday governed and that the state of the record was such that the motion should be treated as one for summary judgment, the Circuit Court on July 13, 1983, entered judgment summarily in favor of Damson Oil Corporation and against Gary Allen Nash finally dismissing the complaint. From that judgment, Nash appeals.

III.
This appeal presents a question of statutory construction. If Damson Oil Corporation is a "contractor" who is an "employer" within the Mississippi Workers' Compensation Act, Miss. Code Ann. §§ 71-3-7 and -9 (1972), Damson wins. On the other hand, if Damson is not a "contractor" and thus not a statutory employer, Nash is entitled to proceed further in the trial court. We approach this question realizing that we do not write on a clean slate.
Damson's case is predicated upon the exclusiveness of liability section of the Act, Miss. Code Ann. § 71-3-9 (1972) which reads:
The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee... .
Nash, however, was not directly employed by Damson. Nash drew his paycheck from Trigger Construction, Inc. Trigger has provided compensation insurance and secured payment of benefits to Nash as required by the Act. Damson attempts to piggyback itself onto Trigger's status as an employer via Doubleday and particularly the following language from the Act, Miss. Code Ann. § 71-3-7 (Supp. 1984):
In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment. [Emphasis supplied]
Construing this language, Doubleday held that, when a highway construction project general contractor who subcontracted out a portion of the construction project and required the subcontractor to secure compensation benefits to its employees, the contractor became a statutory employer entitled to the protection of the exclusiveness of liability provisions of Section 71-3-9. In Doubleday the general contractor, Boyd Construction Co., had no ownership interest in the premises. Moreover, the contractor in Doubleday occupied the position persons of common understanding would label general contractor or prime contractor. Thus, Boyd was the kind of "contractor" contemplated by Section 71-3-7. The case at bar turns not on whether Damson required Trigger to secure compensation for Nash but whether Damson was the kind of "contractor" contemplated by the statute.
The thrust of the statutory rule at issue is the obligation imposed upon a general contractor to secure payment of compensation to employees of his subcontractors. Miss. Code Ann. § 71-3-7 (Supp. 1984). The statute imposes a coverage obligation on one who hires an irresponsible intermediary (one who fails to secure compensation insurance) to perform a regular *1099 and recurring part of the person's business. See Boyd v. Crosby Lumber and Manufacturing Co., 250 Miss. 433, 166 So.2d 106 (1964). In Mosley v. Jones, 224 Miss. 725, 80 So.2d 819 (1955) Jones brought a personal injury suit against B & M Construction Co. [Mosley] charging negligence in the construction of a scaffold which fell, injuring Jones. Chaney, a subcontractor of Mosley, had hired Jones as a plasterer in furtherance of his subcontract. Chaney had not secured workers' compensation insurance for his employees. Because Chaney [subcontractor] was an irresponsible intermediary, B & M [contractor] was liable to Jones [employee of subcontractor] for compensation by virtue of Section 71-3-7. This Court held that B & M was the "statutory employer" of Jones and that Jones' exclusive remedy was workers' compensation benefits. In Mills v. Barrett, 213 Miss. 171, 56 So.2d 485 (1952), the contractor we held liable for payment of workers' compensation benefits to the injured employee of a subcontractor was also obligated under the Act to provide compensation for the benefit of the injured employee of a subcontractor. We have already explained that Doubleday proceeds upon the same premise.
There is another side to the coin. Where the "contractor" invoking the protections of the exclusiveness of liability statute is not itself liable for compensation to the injured worker, illogic, if not absurdity, would attend our sustaining that contractor's exclusivity defense. The fact that such a contractor may require one with whom he contracts to carry compensation insurance for the benefit of the worker in question is of little consequence where the subcontractor in fact secures such insurance. What makes the suit too tight a fit is that on such facts nothing in law obligates such a contractor to secure compensation insurance.
The point becomes clear in the context of the familiar and oft noted trade-off represented by the Workers' Compensation Act, Miss. Code Ann. § 71-3-1, et seq. (Supp. 1984). The worker has given up his right to sue his employer in tort for substantial damages in exchange for a certain, albeit more modest, recovery. The employer, on the other hand, has accepted an obligation to afford compensation without reference to fault and has also waived various traditional common law defenses in exchange for protection from a sizable judgment in a personal injury damage suit. See Dunn, Mississippi Workmen's Compensation, § 2 (3d ed. 1982).
Applied to the case at bar, one of the benefits secured by employers in this trade-off is protection from suit under the exclusiveness of liability section. Miss. Code Ann. § 71-3-9. Here, Trigger has secured compensation for Nash. Notwithstanding, Damson, one who has assumed none of the burdens or obligations of the Act, is seeking to secure this benefit of the exclusivity defense. The symmetry of the Act and its attendant trade-off requires on either side that the benefits of the trade are available only to those who are by law subject to the burdens and obligations of it.
We reached a similar result in Falls v. Mississippi Power & Light Company, 477 So.2d 254, 255 (Miss. 1985). In Falls, the plaintiff brought a wrongful death suit against Mississippi Power & Light Company charging negligence in the maintenance of high voltage power lines. MP & L was a permitee under a special use permit granted it by the National Park Service allowing MP & L to run its power lines across and along the Natchez Trace Parkway. The permit imposed certain provisions and conditions upon MP & L. Plaintiff's decedent was employed by Deviney Company and was trimming and cutting the tops from pine trees under and around MP & L's power lines when the accident occurred. MP & L had required that Deviney secure workers' compensation insurance for the protection of Deviney's employees.
In Falls this Court distinguished Doubleday and held that MP & L was not a statutory employer of plaintiff's decedent. The Court held that the special use *1100 permit granted MP & L by the National Park Service
did not constitute ... [MP & L] as a general or prime contractor for work to be done by Deviney Company along the right-of-way of ... [MP & L] pursuant to its contract with ... [MP & L].
477 So.2d at 258.
A sub silentio basis for the decision is that, on the facts of the case, nothing in Section 71-3-7 imposed upon MP & L the duty to secure or pay compensation to employees of Deviney Company. Because MP & L was not the sort of "contractor" contemplated by the statute, and because Deviney had secured compensation for the benefit of Falls' dependents, MP & L had no duties imposed by the Act and thus would not be allowed to enjoy any of the benefits of the Act. Neither MP & L in Falls, nor Damson here, may gain tort immunity by voluntarily electing to say it had compensation obligations which in fact and in law it did not have.
Because of the operative language employed in Section 71-3-7, counsel seek to lead us into a linguistic bog surely attendant upon any effort to define with precision such terms as "contractor" and "subcontractor" and "independent contractor". Regretably, these terms have not been statutorily defined in a way that is helpful here. Damson correctly notes that every subcontractor is an independent contractor but an independent contractor may or may not be a subcontractor. Dunn, Mississippi Workmen's Compensation, § 10 (3d ed. 1982). The point, however, does not carry us far. Without question Damson is a contractor in a generic sense. Damson has a contractual relationship with the owners of the land imposing various duties and obligations upon each. Damson is also a contractor in the sense that it has a contract with Trigger imposing obligations and duties upon each. The operative point is that Damson's interest, use and activities with respect to the premises are wholly different in nature from those of one ordinarily considered a general or prime contractor  the sort of contractor we believe contemplated by Doubleday, see Section 71-3-7. Damson's position with respect to the premises is similar to that of Mississippi Power & Light Company in Falls and unlike that of Boyd Construction Co. in Doubleday. Damson is an operator or even in a sense an owner pro hac vice, a lessee. On the other hand, Damson lies outside the common understanding of such terms as "prime contractor" or "general contractor". Therefore, Damson is not the sort of "contractor" within the meaning and contemplation of Section 71-3-7.[1]
Damson in brief and in argument consistently reminds us that it required Trigger to secure compensation. The argument proves too much, for carried to its rational limits it would mean that any time A has a contractual relationship with B, A, by contract requiring B to secure compensation coverage for B's employees, would be entitled to the protections of the exclusiveness of liability provisions of the Act as a statutory employer, even though A be a grievous tortfeasor. Under Damson's theory, for example, a building lessee who is a business concern who contracts with a firm to recarpet the interior could escape third party liability for injuries caused by its own negligence merely by including in the recarpeting contract a requirement that the contractor procure compensation insurance and name the business concern as an additional insured with waiver of subrogation. The result is not changed if the business concern is obligated to the owner to recarpet the interior. The lessee is simply not a "contractor" within Section 71-3-7. We would not tolerate such a subterfuge for one minute and pause only slightly longer before rejecting that tendered by Damson.
The judgment of the Circuit Court of Wayne County is reversed. The case is remanded to the docket of that Court whereupon proceedings may recommence *1101 as though Damson's motion for summary judgment had been overruled.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, SULLIVAN and ANDERSON, JJ., concur.
DAN M. LEE, J., concurs in result only.
SULLIVAN and DAN M. LEE, JJ., specially concur.
ROY NOBLE LEE, Presiding Justice, concurring:
I concur with the majority opinion, but feel compelled to reiterate the meat of the decision in view of the fact that the special concurring opinion of Justice Sullivan is, in my view, misplaced.
The meat in the coconut is the obligation which Mississippi Code Annotated § 71-3-7 (Supp. 1984) places upon the general/prime contractor to secure, or assure, workmen's compensation insurance coverage on the employees of a subcontractor. Whether the general contractor obtains the coverage, or requires the subcontractor to secure it, is immaterial. That obligation grants the general contractor immunity from a tort action by an employee of the subcontractor. On the other hand, if there is no obligation to secure the compensation coverage, as was true in Falls v. Miss. Power & Light Co., 477 So.2d 254 (Miss. 1985), the obtaining of such coverage, though laudible, does not grant the immunity.
The special concurring opinion, page 1102, finds nothing in the statute which guides the determination of why Boyd Construction Company in Doubleday, was a "contractor" within § 71-3-7 and why Mississippi Power & Light Company and Damson Oil Corporation were not. The answer is simple.
In Doubleday, the Mississippi State Highway Department let a general contract for highway construction to Boyd Construction Company, the general or prime contractor. Boyd sublet a part of the construction work to W.T. Ratliff, Inc., who became the subcontractor. Boyd required, in the subcontract with Ratliff, that Ratliff secure workmen's compensation coverage to be carried for the protection of the subcontractor's employees, which benefits were paid to Doubleday as a result of personal injuries sustained when struck by an automobile while working on the construction job. Thus, Boyd Construction Company was immune from a tort action by Doubleday, not because of the workmen's compensation coverage, but because the statute § 71-3-7 imposed the obligation on Boyd Construction Company to assure that compensation coverage was in effect on Ratliff's employees.
Compare Doubleday with Falls v. Miss. Power & Light Co., and Nash v. Damson Oil Corporation. In Falls, Mississippi Power & Light Company was not a contractor in the sense that Boyd Construction Company was a general/prime contractor. Mississippi Power & Light was the company or owner. Damson Oil Corporation occupied the same position as company or owner. Mississippi Power & Light and Damson Oil Corporation were in the same status as the Mississippi State Highway Department in Doubleday. Neither Mississippi Power & Light Company nor Damson Oil Corporation sublet work to a subcontractor. Mississippi State Highway Department in Doubleday had no subcontractors. Therefore, Mississippi Power & Light Company and Damson Oil Corporation were not within, or covered by, § 71-3-7. That is the simple answer.
I trust that this brief explanation helps dissolve the smoke and confusion generated by the special concurring opinion of my esteemed colleague, Justice Sullivan.
PATTERSON, C.J., WALKER, P.J., and HAWKINS, J., join this opinion.
SULLIVAN, Justice, specially concurring:
I agree with the decision announced today that Gary Allen Nash is entitled to the *1102 opportunity to prove his common law tort claim against Damson Oil Corporation, notwithstanding the exclusiveness of liability provisions of the Mississippi Workers' Compensation Act. The Court's opinion, however, seems to be gently leading us into a linguistic bog whereunder some contractors are the kind of contractors within Section 71-3-7, and therefore entitled to tort immunity, while other contractors are not. The same may be said of our recent decision in Falls v. Mississippi Power & Light Company, 477 So.2d 254 (Miss. 1985). These two cases are admirable efforts to limit the scope of our decision in Doubleday v. Boyd Construction Company, 418 So.2d 823 (Miss. 1982). My concern is that I find nothing within the statute which reliably guides the determination of why Boyd Construction was a "contractor" within Section 71-3-7 and why Mississippi Power & Light and Damson Oil were not.
The fount from which this linguistic confusion flows is the Doubleday case. In that case a highway construction project general contractor subcontracted out a portion of the project and required the subcontractor to secure workers' compensation insurance for its employees. The subcontractor secured such insurance, as a result of which Boyd Construction was relieved of any compensation it may have had to the subcontractor's employees. When one of the subcontractor's employees was injured and brought a tort action against Boyd, Doubleday held that Boyd was the kind of "contractor" contemplated by Section 71-3-7 and that it enjoyed tort immunity under Section 71-3-9. The fundamental error of the Court's opinion in Doubleday is its constant references to "legislative intent" in the enactment of Sections 71-3-7 and 71-3-9. To the best of my knowledge, this 1948 statute was enacted without any authoritative statement of legislative intent. There is no legislative declaration of purpose that would inform the construction of these provisions of the Act. There are no published committee reports, floor debates, or anything else. Under these circumstances, what the Court in Doubleday says about legislative intent can only be our best guess as to what the legislative intent should have been. In such circumstances, we are better advised to concentrate on what the legislature said and not our speculations as to what it intended. What the legislature has said here is, quoting from Section 71-3-7,
In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment. (Emphasis supplied).
In Doubleday, and in Falls, and in the case at bar, the subcontractor had in fact secured payment of compensation to its employees. In each case that compensation was secured via a policy of workers' compensation insurance wherein the subcontractor was the insured and the premium was paid by the subcontractor.
Doubleday emphasizes  and Damson Oil argues  that some significance ought to attach to the fact that the contract between the contractor [Boyd, MP & L, Damson] and the subcontractor [Ratliff, Deviney, Trigger] required each subcontractor to purchase and obtain in effect workers' compensation insurance. What this notion overlooks is that in each of these cases the subcontractor was independently obligated to secure compensation insurance. Each of these subcontractors is an "employer" within Mississippi Code Annotated § 71-3-3(e) who would have been statutorily obligated to afford compensation under the Act if the contract were wholly silent. Leaving the contract aside, each of these subcontractors would have been guilty of a misdemeanor had it failed to secure compensation and would have been subject to punishment by fine or imprisonment or both. Miss. Code Ann. § 71-3-83 (1972).
It is a complete fiction to suggest that the contractor in these cases has "secured" the payment of compensation to the injured employees of the subcontractors. In each of these cases, the compensation was secured by the subcontractor/employer. Under *1103 Section 71-3-7, the contractor need secure compensation only when the subcontractor has failed to do so. Since the subcontractors in these three cases did not default on their statutory obligations, the contractor's secondary obligation never matured. Therefore, the contractors were not "liable for" and did not "secure" the payment of compensation under Section 71-3-7.
The fact that the employers acted above and beyond their statutory obligations by arranging for the subcontractor to provide compensation insurance (which the subcontractors were already statutorily obligated to do) is beside the point. Because the subcontractors met their Section 71-3-7 obligations, the contractors' duty was never triggered and the contractors therefore had no opportunity to default on or to satisfy their statutory obligations.
Despite these considerations, Doubleday concluded that the contractor  there Boyd Construction  was entitled to tort immunity under Section 71-3-9. Falls and today's case give lip service to this idea, only each goes on to say that the contractors there  Mississippi Power & Light and Damson  are not the kind of contractors contemplated by Doubleday, whatever all of that means. The sort of contractors as are contemplated by Doubleday are cast in the role of the relief pitcher who never gets into the game. He need do nothing. As long as the starting pitcher performs, the relief pitcher receives equal benefits.
A contractor is certainly not an "employer" of the subcontractor's employees for all purposes and at all times under our Workers' Compensation Act. Otherwise, there would be two pitchers on the field at the same time. Both the contractor and the subcontractor would be directed to make compensation payments required under the Act and both would be simultaneously entitled to the assignment of the injured worker's right to recover damages from third parties. Everything directed by the Act would be done in duplicate.
The most that may be said is that a contractor becomes an "employer" within the meaning of Section 71-3-7 when and only when  the subcontractor has defaulted on its statutory obligations. It follows that a contractor is an "employer" entitled to the immunity of Section 71-3-9 only when the subcontractor has defaulted on its statutory obligation and the contractor has stepped in and in fact secured the payment of compensation to the subcontractor's injured employee.
There are two public purposes (which exist without regard to any notion of legislative intent) which I believe point powerfully toward the construction of the Act I would give it. It is within our actual and judicial knowledge that the benefits afforded under our Act are among the lowest in the nation. It is similarly within our actual and judicial knowledge that, if compensation benefits were the sole source of income for an injured worker, that worker would be well below the minimum subsistence level by American standards. Without doubt, we are required to construe the Act liberally, sensibly and reasonably. Such a construction hardly mandates taking away third party tort claims when the language of the Act of the legislature has not clearly done so.
Second, no doubt great restraint should be exercised in suggesting the overruling of a case such as Doubleday which has been on the books for only three years. It would undermine the integrity of our system were our citizens to come to expect wholesale changes in the law every time there are changes in court personnel. On the other hand, where a recent prior decision is demonstrably in error  and clearly so  it is difficult to conceive of any public purpose to be served by perpetuating the mischief it has spawned. As an original proposition, I would have found the majority opinion in Doubleday unquestionably wrong. As the matter now stands, and as the Falls and Nash cases demonstrate, Doubleday has produced arbitrary constructions of the statute. The simple solution that commends itself to me is overruling Doubleday.
*1104 For these reasons, I join in today's decision insofar as it reverses and remands to allow Nash to proceed with his tort action as though Damson's motion for summary judgment had been overruled. I would prefer that the Court's rationale were based upon a simple consideration of what a simple statute clearly says, which, of course, would necessitate an unequivocal overruling of Doubleday.
DAN M. LEE, J., joins in this opinion.
NOTES
[1] In briefs and at argument, the parties have discussed the case of Nations v. Sun Oil Co., 695 F.2d 933 (5th Cir.1983). We trust it will be apparent that anything in Nations contrary to our decision today should be considered with care.