IN THE SUPREME COURT OF MISSISSIPPI

NO. 93-CA-00958-SCT

*DANNY N. SALYER*

*v.*

*MASON TECHNOLOGIES, INC., FORMERLY MASON CHAMBERLAIN, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/16/93 |
| TRIAL JUDGE: | HON. JAMES E. THOMAS |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES KENNETH WETZEL |
| ATTORNEYS FOR APPELLEE: | DORRANCE AULTMAN |
| | CAROL ANN ESTES |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 3/27/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/17/97 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. SCI Steelcon was a subcontractor performing certain work on a project for which the prime contractor was Mason Technologies, Inc. When Danny N. Salyer, an employee of SCI Steelcon working on the project, was injured in the course of his employment, he received $75,000 in benefits pursuant to SCI Steelcon's workers' compensation coverage. Salyer then filed a common law negligence action against Mason Technologies seeking both compensatory and punitive damages. On May 16, 1993, the Circuit Court of Hancock County granted summary judgment in favor of Mason Technologies, ruling that as Salyer's statutory employer, Mason Technologies was entitled to the exclusivity of remedies defense under Mississippi's Workers' Compensation Act, from which judgment Salyer appeals to this Court. Finding that Mason was a prime contractor entitled to tort immunity, we affirm.

I.

**FACTS**

¶2. Mason Technologies, Inc. ("Mason"), formerly Mason Chamberlain, Inc., is a Delaware corporation doing business in Mississippi. On December 17, 1986, the United States Army hired Mason as a prime contractor to customize the Mississippi Army Ammunition Plant at the Stennis Space Center for production of M483-A-1 projectiles. Mason entered into a subcontract with the Austin Company to provide the plant's new material conveyor handling system. Austin, in turn, subcontracted with Mason to remove the old conveyors and other equipment, and subcontracted with several other companies, including Prabb Robotics, to install the new conveyor system. Prabb Robotics then entered into a subcontract with SCI Steelcon, a Michigan corporation, specifically to install the new equipment.

¶3. Danny N. Salyer was hired by SCI Steelcon to supervise installation and debugging of the new conveyor system. On October 17, 1988, while supervising the uncrating of new equipment at the project site, Salyer tripped over an anchor bolt that had secured part of the old system, thus injuring his left knee. For his injury, Salyer received $75,000 in benefits pursuant to SCI Steelcon's Michigan workers' compensation coverage. Salyer then filed a common law negligence action in the Circuit Court of Hancock County against Mason seeking both compensatory and punitive damages. On July 16, 1993, the trial court granted summary judgment in favor of Mason, ruling that as the prime contractor, Mason was the statutory employer of its subcontactors' employees, including Salyer, and thus Mason was entitled to the exclusivity of remedies defense under Mississippi's Workers' Compensation Act.

## II.

## DISCUSSION

¶4. Miss. Code Ann § 71-33-71 (1972) provides, in relevant part, as follows:

> The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue **any other party** at law for such injury or death . . . .

(emphasis added). At issue, therefore, is whether Mason is "any other party" pursuant to § 71-33-71, or whether it is a contractor pursuant to § 71-3-7, making it immune from liability under § 71-3-9's exclusivity of remedy provision. Salyer argues that Mason was not, as a matter of law, Salyer's statutory employer and immune from third-party negligence actions against it. Mason argues that under our decision in ***Doubleday v. Boyd Construction Co.***, 418 So. 2d 823 (Miss. 1982), Mason, as the prime contractor, was immune from tort liability for Salyer's injury. We agree with Mason.

¶5. In ***Doubleday***, we held that where the subcontractor provided compensation coverage to its employees pursuant to its contract with the prime contractor, the prime contractor qualified as a statutory employer and was immune from a common law tort suit by the injured employee. 418 So. 2d at 826-27. We reasoned:

> It would be paradoxical, however, in our opinion, to hold as the appellant entreats that a general contractor risk personal injury judgments in common law suits if he complies with the statute by contractually securing compensation insurance by his subcontractor, but if he lets work to subcontractors who do not comply with the act, then his liability is limited to the sums

provided by the act. We do not think the legislature intended such an improbable result.

*Id.* at 826. Likewise, it would be equally paradoxical to hold that a general contractor limits his liability by hiring subcontractors who do *not* comply with the act, but that he risks common law personal injury judgments if he hires subcontractors who in fact *do* comply with the act. This is exactly the ruling which Salyer seeks in this appeal.

¶6. Although there is no evidence in the record that Mason contractually required its subcontractors to provide compensation coverage for their employees, we see no reason to draw a distinction between prime contractors who contractually require subcontractors to provide compensation coverage on one hand, and prime contractors who hire subcontractors who *already* provide compensation coverage on the other hand. We believe the legislative intent of the workers' compensation statutes would not be effectuated based upon such a superficial, technical distinction. Rather, "[a] sounder result would seem to be the holding that the overall responsibility of the general contractor for getting subcontractors insured, and his latent liability for compensation if he does not, should be sufficient to remove him from the category of 'third party.'" *Doubleday*, 418 So. 2d at 826 (quoting Larson, *Workmen's Compensation Law*, § 72.31(b) (1982)). We find that hiring subcontractors who comply with the act by providing compensation coverage to its employees satisfies this "overall responsibility."

¶7. Salyer argues that Mason's reliance on *Doubleday* is misplaced, and urges this Court to apply instead the cases of *Nash v. Damson Oil Corp.*, 480 So. 2d 1095 (Miss. 1985) and *Falls v. Mississippi Power & Light Co.*, 477 So. 2d 254 (Miss. 1985), wherein we found the employers to be not entitled to the act's exclusivity of remedies defense. We find that *Nash* and *Falls*, however, are clearly distinguishable and inapplicable to the case *sub judice*. In those cases, we held as we did because the employers did not fit the meaning of "contractor" within the statute as contemplated by *Doubleday*. *Nash*, 480 so. 2d at 1100; *Falls*, 477 So. 2d at 258. In the case below, on the other hand, Mason did meet *Doubleday*'s description of a "contractor."

¶8. In *Doubleday*, Boyd Construction Company was the prime contractor on a construction project for the Mississippi Highway Department and subcontracted with W. T. Ratcliff Company to execute a portion of the construction work. 418 So. 2d at 824. This qualified Boyd as a "contractor" within the meaning of Miss Code Ann. § 71-3-7 (1972). In *Falls*, on the other hand, Mississippi Power & Light Company was granted a special use permit by the National Park Service for certain land along the Natchez Trace Parkway. 477 So. 2d at 255. Mississippi Power & Light hired Deviney Company to keep its right-of-way clear of trees, brush and stumps. *Id.* at 256. This Court found that "[t]he permit did not constitute appellee/permittee as a general or prime contractor for work to be done by Deviney Company along the right-of-way of appellee pursuant to its contract with appellee." *Id.* at 258.

¶9. In *Nash*, Damson Oil Corporation was the lessee of an oil producing unit in Mississippi. 480 So. 2d at 1096. Damson contracted with Trigger Contractors, an independent contractor, for the performance of certain work which Damson might require from time to time with respect to the oil and gas wells. *Id.* This Court distinguished Damson from *Doubleday*'s Boyd as follows:

> The operative point is that Damson's interest, use and activities with respect to the premises are wholly different in nature from those of one ordinarily considered a general or prime contractor

-- the sort of contractor we believe contemplated by ***Doubleday***, *see* Section 71-3-7. Damson's position with respect to the premises is similar to that of Mississippi Power & Light Company in ***Falls*** and unlike that of Boyd Construction Co. in ***Doubleday***. Damson is an operator or even in a sense an owner *pro hac vice*, a lessee. On the other hand, Damson lies outside the common understanding of such terms as "prime contractor" or "general contractor". Therefore, Damson is not the sort of "contractor" within the meaning and contemplation of Section 71-3-7.

*Nash*, 480 So. 2d at 1100. The critical distinctions between Boyd in ***Doubleday*** and the employers in ***Nash*** and ***Falls***, therefore, were that Boyd "had no ownership interest in the premises," and "occupied the position persons of common understanding would label general or prime contractor." *Id.* at 1098. We find that these very distinctions apply to Mason in the case *sub judice*.

¶10. Mason certainly had no ownership interest in the construction site owned by the U.S. Army, and Mason's contractual duty to customize the ammunition plant can be seen as nothing other than what persons of common understanding would label that of a general or prime contractor. Clearly, Mason falls within the meaning of "contractor" as contemplated not only by ***Doubleday***, but by ***Nash*** and ***Falls*** as well. It can only be the legislature's intent, therefore, that Mason should be entitled to the exclusivity of remedies defense provided by the act.

¶11. Salyer also urges this Court to follow its ruling in ***Morris v. W.E. Blain & Sons, Inc.***, 511 So. 2d 945 (Miss. 1987), where we held that a subcontractor does not share any immunity claimed by the prime contractor when the subcontractor's negligence causes injury to the employee of another subcontractor. However, the defendant in *Morris* was a co-subcontractor only, not the prime contractor. *Morris* is thus inapplicable to the case *sub judice*. The fact that Mason was a subcontractor as well as the prime contractor is of no concern. The only employers not afforded tort immunity are those such as owners, permittees and lessees. The statutes provide tort immunity to prime contractors. There is no exception which allows a tort claim against a prime contractor, who is always afforded tort immunity as a statutory employer. This Court has stated, "It is obvious that the purpose of the legislature was to prevent the general contractor from escaping liability by employing subcontractors who were not financially responsible and leaving the employees unprotected." ***Mills v. Barrett***, 213 Miss. 171, 174-75, 56 So. 2d 485, 486 (1952). Here, Mason did not so attempt to escape liability, for SCI Steelcon *was* financially responsible and its employees *were* protected. Mason, as the prime contractor, was entitled to tort immunity from liability for Salyer's injury, and thus summary judgment was proper.

¶12. AFFIRMED.

**LEE, C.J., PRATHER, P.J., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. AND BANKS, J.**

**McRAE, JUSTICE, DISSENTING:**

¶13. By ignoring salient facts in the record and omitting them from its opinion, the majority neglects to reveal that at the time of Danny Salyer's injury and the alleged act of negligence which caused it, Mason Technologies was not acting as a general contractor, but working as a subcontractor hired by another subcontractor to remove old machinery from the installation site. That critical aspect of the case notwithstanding, the majority proceeds to label Mason an all-purpose "general contractor"and deem it Salyer's "statutory employer," erroneously clothing it with immunity from tort liability. Moreover, I disagree with the majority's broad pronouncement that any contractor who happens to hire subcontractors which provide workers compensation insurance for their employees is deemed immune from tort liability pursuant to the exclusivity of remedies provision of Miss. Code Ann. § 71-3-9. The Workers' Compensation Act was designed to provide streamlined relief for workers injured on the job, not to immunize employers from liability when someone is injured. Accordingly, I dissent.

I.

¶14. Pursuant to a December 17, 1986 contract with the United States Army, Mason Technologies was hired as the prime contractor to customize the Mississippi Army Ammunition Plant at the Stennis Space Center for production of M483-A-1 projectiles.

¶15. Mason entered into a subcontract with the Austin Company to provide the plant's new material conveyor handling system. Austin was required to "furnish all labor, materials, tools, machinery, equipment, facilities, supplies and services and all things necessary for completion of the cargo material handling system in strict conformity with the specifications provided." Lacking adequate manpower and equipment to remove all of the existing material handling equipment from the premises, Austin, in turn, entered into a subcontract with Mason to remove the conveyors and other old equipment. Austin also subcontracted with several other businesses, including Prabb Robotics, to install the new system. Prabb Robotics, in turn, entered into a subcontract with SCI Steelcon, a Michigan Corporation, specifically to install the new conveyor equipment.

¶16. Danny Salyer, then a resident of Leslie, Michigan, was hired by Steelcon to supervise installation and debugging of the new conveyor system. It was Salyer's understanding that pursuant to its subcontract with Austin, Mason was in charge of removing the existing equipment and that Steelcon's role was limited to the installation of the new conveyor line.

¶17. Removal of the old equipment was completed on October 16, 1988. Early the next morning, after a representative of the Austin Company advised him that the premises had been cleared for inspection, Salyer went to the site to monitor the uncrating of the new equipment. About ten feet away from where the new equipment was to be installed, Salyer tripped over an anchor bolt that had secured part of the old system. He testified in his deposition that the bolt was obscured by grease, oil and other debris that had been left on the on the floor.

II.

¶18. In his appeal to this Court, Salyer asserts that the circuit court and Mason Technologies were mistaken in their reliance upon *Doubleday v. Boyd Construction Co.*, 418 So. 2d 823 (Miss. 1982) and that contrary to the lower court's findings, Mason was not, as a matter of law, Salyer's statutory employer and immune from third-party negligence actions against it.

¶19. Miss. Code Ann. § 71-33-71 provides, in relevant part, as follows:

> The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue **any other party** at law for such injury or death . . . .

As the majority notes, the issue for our consideration is whether Mason is "any other party" pursuant to § 71-33-71, or whether it is a contractor pursuant to Miss. Code Ann. § 71-3-7, making it immune from liability under § 71-3-9's exclusivity of remedies provision. Under the facts as presented in the record, I would find that Mason was functioning as a subcontractor at the time of Salyer's injury and thus is "any other party" open to suit by an injured employee.

¶20. In *Doubleday*, we found that where a prime contractor contractually required its subcontractors to carry insurance on its employees and the subcontractor had provided coverage for its employees, the prime contractor, under the circumstances of the case, was not "any other party," pursuant to Miss. Code Ann. § 71-3-71, which could be sued by the injured employee of the subcontractor. 418 So. 2d at 826-827. In that case, Doubleday, the injured employee of a subcontractor, sought to bring a negligence action against the prime contractor, whose alleged failure to warn oncoming traffic of the road construction project on which Doubleday was working was the proximate cause of injuries he received after being hit by a car. Doubleday's employer, the T.W. Ratliff Co., carried workers' compensation insurance for its employees as required under the terms of its subcontract with the prime contractor, Boyd Construction Company.

¶21. The *Doubleday* Court explained

> Although Miss. Code Ann. § 71-3-9 (1972), dictates workmen's compensation as an employee's exclusive remedy against his employer, Miss. Code Ann. § 71-3-71 (1972), grants the employee or his dependents the right to sue at law "any other party." The question thus becomes one of determining who is a "third party" within the meaning of the statute. The section which we must construe is Miss. Code Ann. § 71-3-7 (1972), which states in part:

> Every employer to whom this chapter applies shall be liable for and shall secure the payment to his employees of the compensation payable under its provisions.

> In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.

*Doubleday,* 418 So. 2d at 825. The Court expressed its perception of the legislative intent in granting immunity from tort litigation to some prime contractors, stating, "It is our opinion the legislature did not intend to subject a general contractor to common law tort liability if he complied with § 71-3-7 by requiring the subcontractor to have workmen's compensation insurance." *Id*. at 826. Turning next to *Mosley v. Jones,* 224 Miss. 725, 80 So. 2d 819 (1955), where a prime contractor was found to have protected itself from tort liability by providing workers' compensation insurance for employees of its subcontractors, the *Doubleday* Court concluded that Boyd similarly protected itself by contractually requiring its subcontractors to carry insurance on their employees. *Doubleday*, 418 So. 2d at 826-827. *See also Morris v. W.E. Blain & Son*, 511 So. 2d 945 (Miss. 1987)(prime contractor

held to be statutory employer where contracts between subcontractors as well as with prime contractor required subcontractors to provide workers' compensation coverage for employees).

¶22. In *Nash v. Damson Oil Corp.*, 480 So. 2d 1095 (Miss. 1985) and *Falls v. Mississippi Power & Light Co.,* 477 So. 2d 254 (Miss. 1985), this Court reached a different result. Recognizing that a contractor could not gain tort immunity "by voluntarily electing to say it had compensation obligations which in fact and law it did not have," both decisions refused to find that the general contractors involved were statutory employers. *Nash,* 480 So. 2d at 1100. In each case, we found that the subcontractors had provided insurance for their employees and that the defendant/appellees were not contractors as contemplated by *Doubleday.*

¶23. Both the majority and concurring opinions in *Nash* address the fallacy of *Doubleday's* emphasis on the general contractor's contractual requirement that the subcontractor provide compensation coverage for its employees. Noting Damson's assertion that it was entitled to immunity because it required the subcontractor, Trigger (Nash's employer), to provide compensation coverage, the majority in *Nash* observed:

> The argument proves too much, for carried to its rational limits it would mean that any time A has a contractual relationship with B, A, by contract requiring B to secure compensation coverage for B's employees, would be entitled to the protections of the exclusiveness of liability provisions of the Act, even though A be a grievous tortfeasor.

*Nash*, 480 So. 2d at 110. As the concurring opinion further recognizes, regardless of any contract requirement, subcontractors as "employers" are required independently to procure coverage pursuant to the Workers' Compensation Act.

> Doubleday emphasizes - and Damson Oil argues - that some significance ought to attach to the fact that the contract between the contractor [Boyd, MP & L, Damson] and the subcontractor [Ratliff, Deviney, Trigger] required each subcontractor to purchase and obtain in effect workers' compensation insurance. What this notion overlooks is that in each of these cases the subcontractor was independently obligated to secure compensation insurance. Each of these subcontractors is an "employer" within Mississippi Code Annotated § 71-3-3(e) who would have been statutorily obligated to afford compensation under the Act if the contract were wholly silent. Leaving the contract aside, each of these subcontractors would have been guilty of a misdemeanor had it failed to secure compensation and would have been subject to punishment by fine or imprisonment or both. Miss. Code Ann. § 71-3-83 (1972).

> It is a complete fiction to suggest that the contractor in these cases has "secured" the payment of compensation to the injured employees of the subcontractors. In each of these cases, the compensation was secured by the subcontractor/employer. Under Section 71-3-7, the contractor need secure compensation only when the subcontractor has failed to do so. Since the subcontractors in these three cases did not default on their statutory obligations, the contractor's secondary obligation never matured. Therefore, the contractors were not "liable for" and did not "secure" the payment of compensation under Section 71-3-7.

> The fact that the employers acted above and beyond their statutory obligations by arranging for the subcontractor to provide compensation insurance (which the subcontractors were already

statutorily obligated to do) is beside the point. Because the subcontractors met their Section 71-3-7 obligations, the contractors' duty was never triggered and the contractors therefore had no opportunity to default on or satisfy their statutory obligations.

*Nash,* 480 So. 2d at 1103 (Sullivan, J., specially concurring).

¶24. The case *sub judice* clearly illustrates the points raised in *Nash.* Salyer's employer, SCI Steelcon, provided compensation insurance for its employees and, indeed, paid more than $75,000.00 in benefits to Salyer pursuant to the Michigan Workers' Compensation Act. The record does not indicate whether Mason required its subcontractors to provide compensation coverage for their employees. Moreover, SCI Steelcon's contractual relationship with Mason was somewhat attenuated: Mason had subcontracted the provision and installation of the new conveyor system with which Steelcon was involved to the Austin Corporation, which, in turn, subcontracted various parts of the job to several businesses, including Prabb Robotics. Prabb Robotics then subcontracted aspects of the system installation to Steelcon. The record is also silent as to the terms of the various subcontractors's contracts. The fact remains, however, that Steelcon met its statutory obligations without any apparent prompting from the prime contractor. Further, no claim for compensation was ever made against Mason. Therefore, any obligation on Mason's part which might have given rise to the exclusivity of liability provision never came into being.

¶25. The majority, however, falls prey to the folly of *Doubleday* and its reward to general contractors for requiring their subcontractors to do what they are already required to do by law. Further, since the record does not indicate whether Mason required its subcontractors to carry compensation coverage and regardless of the fact that Mason was acting as subcontractor when Salyer was injured, the majority takes *Doubleday* one step further and designates Mason a statutory employer, apparently broadening statutory employer immunity to cover just about any contractor who happens to hire a subcontractor who happens to provide its employees with workers' compensation insurance. Contrary to the majority's perception of legislative intent, the beneficent purposes of the Act can hardly be served by a ruling that further narrows the worker's avenues of recourse when injured on the job.

> It is within our actual and judicial knowledge that the benefits afforded under our Act are among the lowest in the nation. It is similarly within our actual and judicial knowledge that, if compensation benefits were the sole source of income for an injured worker, that worker would be well below the minimum subsistence level by American standards. Without doubt, we are required to construe the Act liberally, sensibly and reasonably. Such a construction hardly mandates taking away third party tort claims when the language of the Act of the legislature has not clearly done so.

*Nash,* 480 So. 2d at 1103 (Sullivan, J., specially concurring). Especially under the facts of the case *sub judice*, where an employee of a subcontractor has no control over where he is sent to work, the party designated as "statutory employer" and relieved of any tort liability for injuries caused to employees on the site is further freed from any incentive to provide for the safety of its "statutory employees."

¶26. *Nash* and *Falls* further raise questions as to whether Mason is a contractor as contemplated by *Doubleday* or whether it is more properly "any other party" pursuant to § 71-3-71. As discussed

above, unlike Boyd Construction in *Doubleday*, Mason did not have a direct relationship with the subcontractor, Steelcon. Mason's position, however, is distinguishable also from that of Damson Oil and Mississippi Power and Light Co. In *Nash*, this Court found that Damson, the lessee of the oil well where Nash was injured, was an "operator or even in a sense an owner *pro hoc vice,* a lessee," and thus, not a contractor within the meaning of § 71-3-7. *Nash,* 480 So. 2d at 1100. In *Falls*, where a tree trimmer whose employer worked under contract with MP&L was killed while topping pine trees around power lines on the Natchez Trace Parkway, the utility company was held not to be a contractor pursuant to *Doubleday* because its contract with the employer was pursuant to provisions it was required to fulfill in accordance with the right-of-way permit it had been granted by the National Park Service. *Falls,* 477 So. 2d at 258. That permit, the Court found, did not put MP&L in the same position as a general or prime contractor. *Id.* The majority, however, insists that Mason "clearly" falls within the definition of contractor as contemplated by *Doubleday, Nash* and *Falls,* and concludes that "[i]t can only be the [L]egislature's intent, therefore, that Mason should be entitled to the exclusivity of remedies defense provided by the [A]ct." Again the majority appears to have lost sight of whom the Act was intended to protect. Its reasoning flies in the face of the beneficent purposes of workers' compensation law, which was intended to redistribute the social costs of work-related injuries from the injured workers and the taxpayers to employers.

## III.

¶27. The dual role Mason played as both prime contractor and subcontractor serve to remove it from the *Doubleday* definition of contractor or employer. Recalling the facts of the case, Austin Corporation subcontracted with Mason to remove the old conveyors and other equipment from the building. It was in the performance of duties related to that subcontract that Mason employees committed the alleged act of negligence-leaving a bolt sticking up out of the floor. It is, therefore, Mason, the subcontractor, not Mason, the prime contractor, which is the third party at issue. In *Morris v. W.E. Blain Equipment Co.,* 511 So. 2d 945 (Miss. 1987), this Court held that a subcontractor working under a prime contractor does not share any immunity claimed by the prime contractor when its negligence causes injury to the employee of another subcontractor. *Id.* at 948-950. Under the facts of this case, Mason, accordingly, should not be afforded shelter from a negligence action brought by Salyer under the statutory employer umbrella. To find Mason immune from suit and to expand the statutory employer immunity beyond even the too broad parameters set forth in *Doubleday* is contrary to the purposes of the Workers' Compensation Act. Lest we forget, it is the injured worker whom the Act was intended to protect.

¶28. The majority opinion further leaves Salyer's employer, SCI Steelcon, paying the bills for Salyer's injuries and without recourse against Mason, the subcontractor whose negligence caused the injuries. In addition, Steelcon is burdened by the additional premiums which result when it is forced to pay workers' compensation benefits that cannot be subrogated to the negligent party. Perhaps it is time we announce, as we have in our sovereign immunity cases, that where a contractor or subcontractor carries liability insurance, any immunity claimed under the aegis of the "statutory employer" designation should be waived to the extent of coverage carried. To do so would benefit both the actual employer and the employee, and protect the rights of both. Accordingly, I dissent.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**