By ignoring salient facts in the record and omitting them from its opinion, the majority neglects to reveal that at the time of Danny Salyer's injury and the alleged act of negligence which caused it, Mason Technologies was not acting as a general contractor, but working as a subcontractor hired by another subcontractor to remove old machinery from the installation site. That critical aspect of the case notwithstanding, the majority proceeds to label Mason an all-purpose "general contractor" and deem it Salyer's "statutory employer," erroneously clothing it with immunity from tort liability. Moreover, I disagree with the majority's broad pronouncement that any contractor who happens to hire subcontractors which provide workers compensation insurance for their employees is deemed immune from tort liability pursuant to the exclusivity of remedies provision of Miss. Code Ann. §71-3-9. The Workers' Compensation Act was designed to provide streamlined relief for workers injured on the job, not to immunize employers from liability when someone is injured. Accordingly, I dissent.
 I.
Pursuant to a December 17, 1986 contract with the United States Army, Mason Technologies *Page 1187 
was hired as the prime contractor to customize the Mississippi Army Ammunition Plant at the Stennis Space Center for production of M483-A-1 projectiles.
Mason entered into a subcontract with the Austin Company to provide the plant's new material conveyor handling system. Austin was required to "furnish all labor, materials, tools, machinery, equipment, facilities, supplies and services and all things necessary for completion of the cargo material handling system in strict conformity with the specifications provided." Lacking adequate manpower and equipment to remove all of the existing material handling equipment from the premises, Austin, in turn, entered into a subcontract with Mason to remove the conveyors and other old equipment. Austin also subcontracted with several other businesses, including Prabb Robotics, to install the new system. Prabb Robotics, in turn, entered into a subcontract with SCI Steelcon, a Michigan Corporation, specifically to install the new conveyor equipment.
Danny Salyer, then a resident of Leslie, Michigan, was hired by Steelcon to supervise installation and debugging of the new conveyor system. It was Salyer's understanding that pursuant to its subcontract with Austin, Mason was in charge of removing the existing equipment and that Steelcon's role was limited to the installation of the new conveyor line.
Removal of the old equipment was completed on October 16, 1988. Early the next morning, after a representative of the Austin Company advised him that the premises had been cleared for inspection, Salyer went to the site to monitor the uncrating of the new equipment. About ten feet away from where the new equipment was to be installed, Salyer tripped over an anchor bolt that had secured part of the old system. He testified in his deposition that the bolt was obscured by grease, oil and other debris that had been left on the on the floor.
 II.
In his appeal to this Court, Salyer asserts that the circuit court and Mason Technologies were mistaken in their reliance uponDoubleday v. Boyd Construction Co., 418 So.2d 823 (Miss. 1982) and that contrary to the lower court's findings, Mason was not, as a matter of law, Salyer's statutory employer and immune from third-party negligence actions against it.
Miss. Code Ann. § 71-33-71 provides, in relevant part, as follows:
 The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death. . . .
As the majority notes, the issue for our consideration is whether Mason is "any other party" pursuant to § 71-33-71, or whether it is a contractor pursuant to Miss. Code Ann. § 71-3-7, making it immune from liability under § 71-3-9's exclusivity of remedies provision. Under the facts as presented in the record, I would find that Mason was functioning as a subcontractor at the time of Salyer's injury and thus is "any other party" open to suit by an injured employee.
In Doubleday, we found that where a prime contractor contractually required its subcontractors to carry insurance on its employees and the subcontractor had provided coverage for its employees, the prime contractor, under the circumstances of the case, was not "any other party," pursuant to Miss. Code Ann. §71-3-71, which could be sued by the injured employee of the subcontractor. 418 So.2d at 826-827. In that case, Doubleday, the injured employee of a subcontractor, sought to bring a negligence action against the prime contractor, whose alleged failure to warn oncoming traffic of the road construction project on which Doubleday was working was the proximate cause of injuries he received after being hit by a car. Doubleday's employer, the T.W. Ratliff Co., carried workers' compensation insurance for its employees as required under the terms of its subcontract with the prime contractor, Boyd Construction Company.
The Doubleday Court explained
 Although Miss. Code Ann. § 71-3-9 (1972), dictates workmen's compensation as an employee's exclusive remedy against *Page 1188 
his employer, Miss. Code Ann. § 71-3-71 (1972), grants the employee or his dependents the right to sue at law "any other party." The question thus becomes one of determining who is a "third party" within the meaning of the statute. The section which we must construe is Miss. Code Ann. § 71-3-7 (1972), which states in part:
 Every employer to whom this chapter applies shall be liable for and shall secure the payment to his employees of the compensation payable under its provisions.
 In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.
Doubleday, 418 So.2d at 825. The Court expressed its perception of the legislative intent in granting immunity from tort litigation to some prime contractors, stating, "It is our opinion the legislature did not intend to subject a general contractor to common law tort liability if he complied with § 71-3-7 by requiring the subcontractor to have workmen's compensation insurance." Id. at 826. Turning next to Mosley v. Jones,224 Miss. 725, 80 So.2d 819 (1955), where a prime contractor was found to have protected itself from tort liability by providing workers' compensation insurance for employees of its subcontractors, the Doubleday Court concluded that Boyd similarly protected itself by contractually requiring its subcontractors to carry insurance on their employees.Doubleday, 418 So.2d at 826-827. See also Estate of Morris v.W.E. Blain Sons, 511 So.2d 945 (Miss. 1987) (prime contractor held to be statutory employer where contracts between subcontractors as well as with prime contractor required subcontractors to provide workers' compensation coverage for employees).
In Nash v. Damson Oil Corp., 480 So.2d 1095 (Miss. 1985) andFalls v. Mississippi Power Light Co., 477 So.2d 254 (Miss. 1985), this Court reached a different result. Recognizing that a contractor could not gain tort immunity "by voluntarily electing to say it had compensation obligations which in fact and law it did not have," both decisions refused to find that the general contractors involved were statutory employers. Nash, 480 So.2d at 1100. In each case, we found that the subcontractors had provided insurance for their employees and that the defendant/appellees were not contractors as contemplated byDoubleday.
Both the majority and concurring opinions in Nash address the fallacy of Doubleday's emphasis on the general contractor's contractual requirement that the subcontractor provide compensation coverage for its employees. Noting Damson's assertion that it was entitled to immunity because it required the subcontractor, Trigger (Nash's employer), to provide compensation coverage, the majority in Nash observed:
 The argument proves too much, for carried to its rational limits it would mean that any time A has a contractual relationship with B, A, by contract requiring B to secure compensation coverage for B's employees, would be entitled to the protections of the exclusiveness of liability provisions of the Act, even though A be a grievous tortfeasor.
Nash, 480 So.2d at 1100. As the concurring opinion further recognizes, regardless of any contract requirement, subcontractors as "employers" are required independently to procure coverage pursuant to the Workers' Compensation Act.
 Doubleday emphasizes — and Damson Oil argues — that some significance ought to attach to the fact that the contract between the contractor [Boyd, MP L, Damson] and the subcontractor [Ratliff, Deviney, Trigger] required each subcontractor to purchase and obtain in effect workers' compensation insurance. What this notion overlooks is that in each of these cases the subcontractor was independently obligated to secure compensation insurance. Each of these subcontractors is an "employer" within Mississippi Code Annotated § 71-3-3(e) who would have been statutorily obligated to afford compensation under the Act if the contract were wholly silent. Leaving the contract aside, each of these subcontractors would have been guilty of a misdemeanor had it failed to secure compensation and would have *Page 1189 
been subject to punishment by fine or imprisonment or both. Miss. Code Ann. § 71-3-83 (1972).
 It is a complete fiction to suggest that the contractor in these cases has "secured" the payment of compensation to the injured employees of the subcontractors. In each of these cases, the compensation was secured by the subcontractor/employer. Under Section 71-3-7, the contractor need secure compensation only when the subcontractor has failed to do so. Since the subcontractors in these three cases did not default on their statutory obligations, the contractor's secondary obligation never matured. Therefore, the contractors were not "liable for" and did not "secure" the payment of compensation under Section 71-3-7.
 The fact that the employers acted above and beyond their statutory obligations by arranging for the subcontractor to provide compensation insurance (which the subcontractors were already statutorily obligated to do) is beside the point. Because the subcontractors met their Section 71-3-7 obligations, the contractors' duty was never triggered and the contractors therefore had no opportunity to default on or satisfy their statutory obligations.
Nash, 480 So.2d at 1103 (Sullivan, J., specially concurring).
The case sub judice clearly illustrates the points raised inNash. Salyer's employer, SCI Steelcon, provided compensation insurance for its employees and, indeed, paid more than $75,000.00 in benefits to Salyer pursuant to the Michigan Workers' Compensation Act. The record does not indicate whether Mason required its subcontractors to provide compensation coverage for their employees. Moreover, SCI Steelcon's contractual relationship with Mason was somewhat attenuated: Mason had subcontracted the provision and installation of the new conveyor system with which Steelcon was involved to the Austin Corporation, which, in turn, subcontracted various parts of the job to several businesses, including Prabb Robotics. Prabb Robotics then subcontracted aspects of the system installation to Steelcon. The record is also silent as to the terms of the various subcontractors's contracts. The fact remains, however, that Steelcon met its statutory obligations without any apparent prompting from the prime contractor. Further, no claim for compensation was ever made against Mason. Therefore, any obligation on Mason's part which might have given rise to the exclusivity of liability provision never came into being.
The majority, however, falls prey to the folly of Doubleday
and its reward to general contractors for requiring their subcontractors to do what they are already required to do by law. Further, since the record does not indicate whether Mason required its subcontractors to carry compensation coverage and regardless of the fact that Mason was acting as subcontractor when Salyer was injured, the majority takes Doubleday one step further and designates Mason a statutory employer, apparently broadening statutory employer immunity to cover just about any contractor who happens to hire a subcontractor who happens to provide its employees with workers' compensation insurance. Contrary to the majority's perception of legislative intent, the beneficent purposes of the Act can hardly be served by a ruling that further narrows the worker's avenues of recourse when injured on the job.
 It is within our actual and judicial knowledge that the benefits afforded under our Act are among the lowest in the nation. It is similarly within our actual and judicial knowledge that, if compensation benefits were the sole source of income for an injured worker, that worker would be well below the minimum subsistence level by American standards. Without doubt, we are required to construe the Act liberally, sensibly and reasonably. Such a construction hardly mandates taking away third party tort claims when the language of the Act of the legislature has not clearly done so.
Nash 480 So.2d at 1103 (Sullivan, J., specially concurring). Especially under the facts of the case sub judice, where an employee of a subcontractor has no control over where he is sent to work, the party designated as "statutory employer" and relieved of any tort liability for injuries caused to employees on the *Page 1190 
site is further freed from any incentive to provide for the safety of its "statutory employees."
Nash and Falls further raise questions as to whether Mason is a contractor as contemplated by Doubleday or whether it is more properly "any other party" pursuant to § 71-3-71. As discussed above, unlike Boyd Construction in Doubleday, Mason did not have a direct relationship with the subcontractor, Steelcon. Mason's position, however, is distinguishable also from that of Damson Oil and Mississippi Power and Light Co. In Nash,
this Court found that Damson, the lessee of the oil well where Nash was injured, was an "operator or even in a sense an ownerpro hoc vice, a lessee," and thus, not a contractor within the meaning of § 71-3-7. Nash, 480 So.2d at 1100. In Falls, where a tree trimmer whose employer worked under contract with MP L was killed while topping pine trees around power lines on the Natchez Trace Parkway, the utility company was held not to be a contractor pursuant to Doubleday because its contract with the employer was pursuant to provisions it was required to fulfill in accordance with the right-of-way permit it had been granted by the National Park Service. Falls, 477 So.2d at 258. That permit, the Court found, did not put MP L in the same position as a general or prime contractor. Id. The majority, however, insists that Mason "clearly" falls within the definition of contractor as contemplated by Doubleday, Nash and Falls, and concludes that "[i]t can only be the [L]egislature's intent, therefore, that Mason should be entitled to the exclusivity of remedies defense provided by the [A]ct." Again the majority appears to have lost sight of whom the Act was intended to protect. Its reasoning flies in the face of the beneficent purposes of workers' compensation law, which was intended to redistribute the social costs of work-related injuries from the injured workers and the taxpayers to employers.
 III.
The dual role Mason played as both prime contractor and subcontractor serve to remove it from the Doubleday definition of contractor or employer. Recalling the facts of the case, Austin Corporation subcontracted with Mason to remove the old conveyors and other equipment from the building. It was in the performance of duties related to that subcontract that Mason employees committed the alleged act of negligence-leaving a bolt sticking up out of the floor. It is, therefore, Mason, the subcontractor, not Mason, the prime contractor, which is the third party at issue. In Estate of Morris v. W.E. Blain Sons,Inc., 511 So.2d 945 (Miss. 1987), this Court held that a subcontractor working under a prime contractor does not share any immunity claimed by the prime contractor when its negligence causes injury to the employee of another subcontractor. Id. at 948-950. Under the facts of this case, Mason, accordingly, should not be afforded shelter from a negligence action brought by Salyer under the statutory employer umbrella. To find Mason immune from suit and to expand the statutory employer immunity beyond even the too broad parameters set forth in Doubleday is contrary to the purposes of the Workers' Compensation Act. Lest we forget, it is the injured worker whom the Act was intended to protect.
The majority opinion further leaves Salyer's employer, SCI Steelcon, paying the bills for Salyer's injuries and without recourse against Mason, the subcontractor whose negligence caused the injuries. In addition, Steelcon is burdened by the additional premiums which result when it is forced to pay workers' compensation benefits that cannot be subrogated to the negligent party. Perhaps it is time we announce, as we have in our sovereign immunity cases, that where a contractor or subcontractor carries liability insurance, any immunity claimed under the aegis of the "statutory employer" designation should be waived to the extent of coverage carried. To do so would benefit both the actual employer and the employee, and protect the rights of both. Accordingly, I dissent.
SULLIVAN, P.J., and BANKS, J., join this opinion. *Page 1191