SCI Steelcon was a subcontractor performing certain work on a project for which the prime contractor was Mason Technologies, Inc. When Danny N. Salyer, an employee of SCI Steelcon working on the project, was injured in the course of his employment, he received $75,000 in benefits pursuant to SCI Steelcon's workers' compensation coverage. Salyer then filed a common law negligence action against Mason Technologies seeking both compensatory and punitive damages. On May 16, 1993, the Circuit Court of Hancock County granted summary judgment in favor of Mason Technologies, ruling that as Salyer's statutory employer, Mason Technologies was entitled to the exclusivity of remedies defense under Mississippi's Workers' Compensation Act, from which judgment Salyer appeals to this Court. Finding that Mason was a prime contractor entitled to tort immunity, we affirm.
 I. FACTS
Mason Technologies, Inc. ("Mason"), formerly Mason Chamberlain, Inc., is a Delaware corporation doing business in Mississippi. On December 17, 1986, the United States Army hired Mason as a prime contractor to customize the Mississippi Army Ammunition Plant at the Stennis Space Center for production of M483-A-1 projectiles. Mason entered into a subcontract with the Austin Company to provide the plant's new material conveyor handling system. Austin, in turn, subcontracted with Mason to remove the old conveyors and other equipment, and subcontracted with several other companies, including Prabb Robotics, to install the new conveyor system. Prabb Robotics then entered into a subcontract with SCI Steelcon, a Michigan corporation, specifically to install the new equipment.
Danny N. Salyer was hired by SCI Steelcon to supervise installation and debugging of the new conveyor system. On October 17, 1988, while supervising the uncrating of new equipment at the project site, Salyer tripped over an anchor bolt that had secured part of the old system, thus injuring his left knee. For his injury, Salyer received $75,000 in benefits pursuant to SCI Steelcon's Michigan workers' compensation coverage. Salyer then filed a common law negligence action in the Circuit Court of Hancock County against Mason seeking both compensatory and punitive damages. On July 16, 1993, the trial court granted summary judgment in favor of Mason, ruling that as the prime contractor, Mason was the statutory employer of its subcontactors' employees, including Salyer, and thus Mason was entitled to the exclusivity of remedies defense under Mississippi's Workers' Compensation Act.
 II. DISCUSSION
Miss.Code Ann § 71-33-71 (1972) provides, in relevant part, as follows:
 The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death. . . .
(emphasis added). At issue, therefore, is whether Mason is "any other party" pursuant to § 71-33-71, or whether it is a contractor pursuant to § 71-3-7, making it immune from liability under § 71-3-9's exclusivity of remedy provision. Salyer argues that Mason was not, as a matter of law, Salyer's statutory employer and immune from third-party negligence actions against it. Mason argues that under our decision in Doubleday v. BoydConstruction Co., 418 So.2d 823 (Miss. 1982), Mason, as the prime contractor, was immune from tort liability for Salyer's injury. We agree with Mason.
In Doubleday, we held that where the subcontractor provided compensation coverage to its employees pursuant to its contract with the prime contractor, the prime contractor qualified as a statutory employer and was immune from a common law tort suit by the injured employee. 418 So.2d at 826-27. We reasoned: *Page 1185 
 It would be paradoxical, however, in our opinion, to hold as the appellant entreats that a general contractor risk personal injury judgments in common law suits if he complies with the statute by contractually securing compensation insurance by his subcontractor, but if he lets work to subcontractors who do not comply with the act, then his liability is limited to the sums provided by the act. We do not think the legislature intended such an improbable result.
Id. at 826. Likewise, it would be equally paradoxical to hold that a general contractor limits his liability by hiring subcontractors who do not comply with the act, but that he risks common law personal injury judgments if he hires subcontractors who in fact do comply with the act. This is exactly the ruling which Salyer seeks in this appeal.
Although there is no evidence in the record that Mason contractually required its subcontractors to provide compensation coverage for their employees, we see no reason to draw a distinction between prime contractors who contractually require subcontractors to provide compensation coverage on one hand, and prime contractors who hire subcontractors who already provide compensation coverage on the other hand. We believe the legislative intent of the workers' compensation statutes would not be effectuated based upon such a superficial, technical distinction. Rather, "[a] sounder result would seem to be the holding that the overall responsibility of the general contractor for getting subcontractors insured, and his latent liability for compensation if he does not, should be sufficient to remove him from the category of `third party.'" Doubleday, 418 So.2d at 826 (quoting Larson, Workmen's Compensation Law, § 72.31(b) (1982)). We find that hiring subcontractors who comply with the act by providing compensation coverage to its employees satisfies this "overall responsibility."
Salyer argues that Mason's reliance on Doubleday is misplaced, and urges this Court to apply instead the cases ofNash v. Damson Oil Corp., 480 So.2d 1095 (Miss. 1985) andFalls v. Mississippi Power Light Co., 477 So.2d 254 (Miss. 1985), wherein we found the employers to be not entitled to the act's exclusivity of remedies defense. We find that Nash andFalls, however, are clearly distinguishable and inapplicable to the case sub judice. In those cases, we held as we did because the employers did not fit the meaning of "contractor" within the statute as contemplated by Doubleday. Nash, 480 So.2d at 1100;Falls, 477 So.2d at 258. In the case below, on the other hand, Mason did meet Doubleday's description of a "contractor."
In Doubleday, Boyd Construction Company was the prime contractor on a construction project for the Mississippi Highway Department and subcontracted with W.T. Ratcliff Company to execute a portion of the construction work. 418 So.2d at 824. This qualified Boyd as a "contractor" within the meaning of Miss Code Ann. § 71-3-7 (1972). In Falls, on the other hand, Mississippi Power Light Company was granted a special use permit by the National Park Service for certain land along the Natchez Trace Parkway. 477 So.2d at 255. Mississippi Power 
Light hired Deviney Company to keep its right-of-way clear of trees, brush and stumps. Id. at 256. This Court found that "[t]he permit did not constitute appellee/permittee as a general or prime contractor for work to be done by Deviney Company along the right-of-way of appellee pursuant to its contract with appellee." Id. at 258.
In Nash, Damson Oil Corporation was the lessee of an oil producing unit in Mississippi. 480 So.2d at 1096. Damson contracted with Trigger Contractors, an independent contractor, for the performance of certain work which Damson might require from time to time with respect to the oil and gas wells. Id.
This Court distinguished Damson from Doubleday's Boyd as follows:
 The operative point is that Damson's interest, use and activities with respect to the premises are wholly different in nature from those of one ordinarily considered a general or prime contractor — the sort of contractor we believe contemplated by Doubleday, see Section 71-3-7. Damson's position with respect to the premises is similar to that of Mississippi Power Light Company in Falls and unlike that of *Page 1186 
Boyd Construction Co. in Doubleday. Damson is an operator or even in a sense an owner pro hac vice,
a lessee. On the other hand, Damson lies outside the common understanding of such terms as "prime contractor" or "general contractor". Therefore, Damson is not the sort of "contractor" within the meaning and contemplation of Section 71-3-7.
Nash, 480 So.2d at 1100. The critical distinctions between Boyd in Doubleday and the employers in Nash and Falls,
therefore, were that Boyd "had no ownership interest in the premises," and "occupied the position persons of common understanding would label general or prime contractor." Id. at 1098. We find that these very distinctions apply to Mason in the case sub judice.
Mason certainly had no ownership interest in the construction site owned by the U.S. Army, and Mason's contractual duty to customize the ammunition plant can be seen as nothing other than what persons of common understanding would label that of a general or prime contractor. Clearly, Mason falls within the meaning of "contractor" as contemplated not only by Doubleday,
but by Nash and Falls as well. It can only be the legislature's intent, therefore, that Mason should be entitled to the exclusivity of remedies defense provided by the act.
Salyer also urges this Court to follow its ruling in Morris v.W.E. Blain Sons, Inc., 511 So.2d 945 (Miss. 1987), where we held that a subcontractor does not share any immunity claimed by the prime contractor when the subcontractor's negligence causes injury to the employee of another subcontractor. However, the defendant in Morris was a co-subcontractor only, not the prime contractor. Morris is thus inapplicable to the case subjudice. The fact that Mason was a subcontractor as well as the prime contractor is of no concern. The only employers not afforded tort immunity are those such as owners, permittees and lessees. The statutes provide tort immunity to prime contractors. There is no exception which allows a tort claim against a prime contractor, who is always afforded tort immunity as a statutory employer. This Court has stated, "It is obvious that the purpose of the legislature was to prevent the general contractor from escaping liability by employing subcontractors who were not financially responsible and leaving the employees unprotected."Mills v. Barrett, 213 Miss. 171, 174-75, 56 So.2d 485, 486 (1952). Here, Mason did not so attempt to escape liability, for SCI Steelcon was financially responsible and its employeeswere protected. Mason, as the prime contractor, was entitled to tort immunity from liability for Salyer's injury, and thus summary judgment was proper.
AFFIRMED.
DAN LEE, C.J., PRATHER, P.J., and PITTMAN, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by SULLIVAN, P.J., and BANKS, J.