741 So.2d 332 (1999)
Francisca CASTILLO, Individually and as Personal Representative of Ramon Castillo, Deceased, Appellant,
v.
M.E.K. CONSTRUCTION, INC., Carmel Construction Ms, Inc. and Gulf Coast Partners I, L.P., Appellees.
No. 98-CA-00626-COA.
Court of Appeals of Mississippi.
May 4, 1999.
*333 Donald C. Dornan, Jr., Biloxi, Attorney for Appellant.
William V. Westbrook III, Timothy Dale Crawley, Gulfport, Attorneys for Appellees.
BEFORE McMILLIN, C.J., DIAZ, J., KING, P.J. AND PAYNE, J.
*334 PAYNE, J., for the Court:
¶ 1. Francisca Castillo, individually and as personal representative of her deceased husband, Ramon Castillo, appeals a summary judgment granted against her and in favor of M.E.K. Construction, Inc., and Carmel Construction MS, Inc. The circuit court ruled that Castillo's exclusive remedy was found in Mississippi's Workers' Compensation Act. We affirm.

THE FACTS
¶ 2. Employed as a framing carpenter, Ramon Castillo worked for Aurelio Flores-Diaz Construction Company (Diaz Construction), a Texas company. On March 5, 1995, while working on a construction project in Gulfport, Mississippi, Castillo died as a result of an accidental fall. His widow, Francisca Castillo filed a lawsuit for damages against Diaz Construction, M.E.K. Construction, Inc. of Houston, Texas, Carmel Construction MS, Inc., and Gulf Coast Partners I (Gulf Coast).
¶ 3. Gulf Coast is a limited partnership organized and existing under the laws of the State of Colorado and is the owner of Plantation Apartments, the construction project which is the subject of this litigation. Pursuant to a written agreement, Gulf Coast employed Carmel Construction to build Plantation Apartments. Gulf Coast required Carmel Construction to purchase workers' compensation insurance, which it did. Thereafter, Carmel Construction contracted with M.E.K. Construction as a subcontractor.
¶ 4. M.E.K. Construction is a Texas corporation and was employed to perform framing work associated with the construction of Plantation Apartments. Under the contract, M.E.K. was required to secure and maintain workers' compensation insurance, which it did. In turn, M.E.K. hired Diaz Construction as a sub-subcontractor to perform carpentry services on the Plantation Apartment project. By the terms of the M.E.K. Construction contract, Diaz Construction was obliged to secure workers' compensation insurance for their work on the project. According to M.E.K., Diaz Construction advised M.E.K. that such insurance had been purchased and provided to M.E.K. a certificate of coverage. However, Diaz Construction did not procure the required insurance policy as they agreed in their contract.
¶ 5. In an affidavit, Michael W. Kossow, president of M.E.K., indicated that Francisca Castillo filed her petition to controvert in Texas as to the workers' compensation coverage available from her husband's employer, Diaz Construction. Such coverage was denied. According to Kossow, Castillo has not filed a petition to controvert against his company, M.E.K. Construction, seeking workers' compensation benefits. Carmel Construction representative and president, Randy C. Bryant, also indicated by affidavit that Castillo had not submitted a petition to controvert against Carmel Construction.
¶ 6. Carmel Construction, Gulf Coast Partners, and M.E.K. Construction jointly filed a motion for summary judgment asserting that they were statutory employers of the deceased and therefore were protected by the exclusive remedy provision of the Mississippi Workers' Compensation Act. After a hearing on the matter, the circuit court agreed and granted summary judgment in favor of Carmel Construction and M.E.K. Construction. In its memorandum opinion, the court made findings of fact some of which are as follows:
1. Ramon Castillo was an employee of Diaz Construction who died while working in the course and scope of his employment and while working under the direct supervision of Diaz Construction.
2. Gulf Coast Partners are the owners of the Plantation Apartment project.
3. By written agreement, Gulf Coast contracted with Carmel Construction as the "Prime Contractor" on the project. The agreement required Carmel Construction to carry workers' compensation insurance, which it did.

*335 4. Carmel Construction entered into a contract with M.E.K. Construction for subcontracting work and required it to obtain workers' compensation insurance which M.E.K. Construction did.
5. Thereafter, M.E.K. Construction contracted with Diaz Construction to be a sub-subcontractor for carpentry services. M.E.K. Construction likewise required Diaz Construction to carry workers' compensation insurance. Diaz represented to M.E.K. that it had secured the required policy when in fact such insurance was not secured.
6. Diaz Construction filed an Employer's Report of Injury with the carrier which Diaz Construction had represented to M.E.K. Construction and Carmel Construction that provided its coverage. On March 17, 1995, that insurance carrier denied coverage.
7. As of the date of entry of the summary judgment on April 6, 1998, Castillo had not filed a petition to controvert for workers' compensation benefits against M.E.K Construction or Carmel Construction.
8. Both M.E.K. Construction and Carmel Construction are statutory employers of Ramon Castillo and both had workers' compensation insurance in effect at the time of his death.
The circuit court concluded that, based on applicable law, M.E.K. Construction and Carmel Construction were immune from the claims set forth in Castillo's complaint because the exclusive remedy available to Mrs. Castillo and the Estate of Roman Castillo was workers' compensation. However, the circuit court found summary judgment was not applicable to Gulf Coast Partners.
¶ 7. Castillo appeals the circuit court's judgment and assigns the following as issues on appeal:
I. THE CIRCUIT COURT ERRED IN FINDING THAT CARMEL CONSTRUCTION WAS A "STATUTORY EMPLOYER" OF RAMON CASTILLO AND IN GRANTING IT SUMMARY JUDGMENT.
II. THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO M.E.K. CONSTRUCTION AS THERE EXISTS A DISPUTED ISSUE OF FACT AS TO WHETHER RAMON CASTILLO'S EMPLOYER HAD SECURED WORKERS' COMPENSATION COVERAGE.
III. THE EXTENSION OF IMMUNITY FROM COMMON LIABILITY UNDER THE MISSISSIPPI WORKERS' COMPENSATION ACT SHOULD EXTEND ONLY TO THE EMPLOYER WHO ACTUALLY SECURES COVERAGE AND/OR BE LIMITED TO THE PARTIES TO THE CONTRACT OF EMPLOYMENT AND SHOULD NOT EXTEND UP THE HIERARCHY OF EMPLOYMENT CONTRACTS.

DISCUSSION

Standard of Review
¶ 8. Our standard of review of a trial court's decision to grant a summary judgment is well-settled. We conduct a de novo review of orders granting or denying summary judgment looking at all the evidentiary matters before the circuit court including admissions in pleadings, answers to interrogatories, depositions, and affidavits. Russell v. Orr, 700 So.2d 619, 621 (Miss.1997); Aetna Casualty & Surety Co. v. Berry, 669 So.2d 56, 70 (Miss.1996). Even further, we consider the evidence in the light most favorable to the party against whom the motion has been made. Id.; M.R.C.P. 56(c). With these principles in mind, we proceed to address Castillo's assignments of error.

I. THE CIRCUIT COURT ERRED IN FINDING THAT CARMEL CONSTRUCTION WAS A "STATUTORY EMPLOYER" OF RAMON CASTILLO AND IN GRANTING IT SUMMARY JUDGMENT.
*336 ¶ 9. Pursuant to the terms of Mississippi's Workers' Compensation Act (the Act), where the employer is a subcontractor, the general contractor is liable and must provide compensation to injured employees of the subcontractor, unless, the subcontractor has secured workers' compensation insurance. Miss.Code Ann. § 71-3-7 (Rev.1995). Castillo argues that Carmel Construction was not a prime contractor as contemplated by the Act and therefore was not the deceased's statutory employer. Consequently, Castillo urges that her lawsuit is not barred by the Act's exclusive remedy provision which provides as follows:
The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his representative in case death results form the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee.
Miss.Code Ann. § 71-3-9 (Rev.1995). The Act also provides:
The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death....
Miss.Code Ann. § 71-3-7 (Rev.1995) (emphasis added).

A. Was Carmel Construction a "prime contractor?"
¶ 10. On this issue, the circuit court specifically found that Carmel Construction was the deceased's statutory employer for purposes of the Act, and therefore, Castillo's exclusive remedy was workers' compensation. Castillo, however, maintains that Carmel Construction was not a general contractor entitled to immunity from suit pursuant to current case law and was "any other party" under section 71-3-9. Several cases on this issue have been cited by both parties in support of their arguments. We will review the case law on this issue as it has developed chronologically.
¶ 11. First, there is Doubleday v. Boyd Const. Co., 418 So.2d 823 (Miss.1982). The Mississippi Supreme Court held that where a highway construction project prime contractor subcontracts out a portion of a project and requires the subcontractor to secure compensation benefits for its employees, the prime contractor becomes a statutory employer entitled to the protection of the exclusiveness of liability provisions of the Act. Doubleday, 418 So.2d at 826. Regarding the contractor in Doubleday, the supreme court in a subsequent case commented: "[T]he general contractor, Boyd Construction Co., had no ownership interest in the premises. Moreover, the contractor in Doubleday occupied the position persons of common understanding would label general contractor or prime contractor. Thus, Boyd was the kind of `contractor' contemplated by Section 71-3-7." Nash v. Damson Oil Corp., 480 So.2d 1095, 1103 (Miss.1985) (emphasis added).
¶ 12. A wrongful death suit was filed in Falls v. Mississippi Power and Light Co., 477 So.2d 254 (Miss.1985) by the plaintiff against Mississippi Power & Light Company (MP & L) alleging negligence in the maintenance of high voltage *337 power lines. Falls, 477 So.2d at 255. MP & L was a permittee under a special use permit granted it by the National Park Service allowing it to run power lines across and along the Natchez Trace Parkway. Id. The plaintiff's decedent was employed by Deviney Company and at the time of the accident was trimming and cutting the tops from pine trees under and around MP & L's power lines. Id. By virtue of a contract, MP & L had required that Deviney secure workers' compensation insurance for the protection of Deviney's employees. Id. at 256. The Mississippi Supreme Court in Falls distinguished Doubleday and held that MP & L was not a statutory employer of plaintiff's decedent on the grounds that the special use permit granted MP & L by the National Park Service did not make MP & L a general or prime contractor for work to be done by Deviney Company along the right-of-way. Falls, 477 So.2d at 258. The supreme court concluded that nothing in the Workers' Compensation Act imposed upon MP & L the duty to secure or pay compensation to employees of Deviney Company. Id. Construing the case, the Mississippi Supreme Court later stated: "Because MP & L was not the sort of contractor contemplated by the statute, and because Deviney had secured compensation for the benefit of Falls' dependents, MP & L had no duties imposed by the Act and thus would not be allowed to enjoy any of the benefits of the Act." Nash, 480 So.2d at 1090-100. In Falls, the supreme court also concluded that MP & L was "any other party" within the meaning of section 71-3-7 and subject to a common law negligence action. Falls, 477 So.2d at 258.
¶ 13. After Falls, there is Nash, the primary case on which Castillo relies. In Nash, the appellee, Damson Oil Corporation, was the lessee of an oil producing unit in Mississippi. Nash, 480 So.2d at 1096. Damson Oil contracted with Trigger Contractors for certain work relating to the oil and gas wells. Id. Nash was an employee of Trigger and was injured while on the job. Id. In distinguishing Nash from Doubleday's Boyd Construction, the Mississippi Supreme Court stated:
The operative point is that Damson's interest, use and activities with respect to the premises are wholly different in nature from those of one ordinarily considered a general or prime contractor the sort of contractor we believe contemplated by Doubleday,... Damson's position with respect to the premises is similar to that of Mississippi Power & Light Company in Falls and unlike that of Boyd Construction Co. in Doubleday. Damson is an operator or even in a sense an owner pro hac vice, a lessee. On the other hand, Damson lies outside the common understanding of such terms as "prime contractor" or "general contractor". Therefore, Damson is not the sort of "contractor" within the meaning and contemplation of Section 71-3-7.
Nash, 480 So.2d at 1100. The Nash court reasoned further that
[w]here the "contractor" invoking the protections of the exclusiveness of liability statute is not itself liable for compensation to the injured worker, illogic, if not absurdity, would attend our sustaining that contractor's exclusivity defense. The fact that such a contractor may require one with whom he contracts to carry compensation insurance for the benefit of the worker in question is of little consequence where the subcontractor in fact secures such insurance. What makes the suit too tight a fit is that on such facts nothing in law obligates such a contractor to secure compensation insurance.
Id. at 1099.
¶ 14. Brown v. Williams was considered by the supreme court in 1987. Brown v. Williams, 504 So.2d 1188 (Miss.1987). Brown was injured while employed by Jones Casing Crews (Jones), and he and his wife filed a lawsuit against R.E. Williams Drilling Company (Williams) and others. Id. at 1188. Williams had obtained from an independent promoter of oil and gas operations a one-fourth royalty *338 interest in oil, gas and minerals being explored by the oil and gas well project which was the subject of the Brown's lawsuit. Id. at 1192-93. The independent promoter also contracted with Williams for drilling the oil well. Thereafter, Williams subcontracted with Jones for casing services. Id. at 1193. The Mississippi Supreme Court held that Williams's ownership interest in the well did not make it an owner similar to MP & L in Falls, or Damson Oil in Nash, or even a third party who may be liable in a tort claim. Id. The Brown court decided that Williams's contract with the independent promoter made it a general contractor and subject to and protected by the Act because Williams was obligated as a contractor to assure that Jones's employees were covered by workers' compensation insurance. Id. Thus, Williams was entitled to statutory immunity from third-party tort liability. Id. at 1194.
¶ 15. In 1996, the United States Court of Appeals for the Fifth Circuit certified to the Mississippi Supreme Court the following question: Whether the Mississippi's Workers' Compensation Act extends immunity to a general contractor or a subcontractor in a negligence action brought against them by the employee of a sub-subcontractor? Crowe v. Brasfield & Gorrie Gen. Contractor, Inc., 688 So.2d 752, 754 (Miss.1996). Responding "yes" to the question, the supreme court ruled that the exclusive remedy provisions of the Act protect general contractors and subcontractors when a sub-subcontractor has workers' compensation insurance. Id. at 757. The court held that "if the sub-subcontractor did not have workers' compensation insurance, the injured employee could ascend the hierarchy to get workers' compensation coverage from the subcontractor immediately above his employer or further up until he received coverage." Id.
¶ 16. Richmond v. Benchmark Const. Corp., 692 So.2d 60 (Miss.1997) was decided by the supreme court in 1997. In that case, Richmond was an employer of United Piping Systems (UPS) when he was injured on the job. Id. at 61. UPS was subcontracted to perform plumbing service by Benchmark Construction Company (Benchmark), the general contractor on a renovation project. Id. At all relevant times, UPS had workers' compensation coverage on all its employees including Richmond. Id. Richmond filed a lawsuit against Benchmark which the lower court dismissed granting Benchmark a summary judgment. Id. Richmond argued on appeal that Benchmark was not the type of contractor afforded protection of the statutory employer's exclusivity defense pursuant to Doubleday, Nash, Falls, and Magee v. Transcontinental Gas Pipe Line Corp., 551 So.2d 182, 184 (Miss.1989) (ruling that where the defendant was not required under the Act to provide workers' compensation insurance on the injured plaintiff, defendant could "not gain tort immunity by assuming compensation obligations which in fact and in law it did not have."). Richmond, 692 So.2d at 63. In Richmond, the supreme court stated:
In each of these cases, a non-general contractor party who owned property interests on the site where the injury occurred was sued. The Court held in each of these cases that the property owners could not assume the posture of a contractor. Where those defendants had no responsibility under the Workers' Compensation Act, they therefore enjoyed none of the benefits of the Act.
Richmond, 692 So.2d at 63. Without furnishing any detail into Benchmark's activities as a general contractor, the supreme court held that Benchmark was a general contractor and that they were not the owner of the property. Id.
¶ 17. Shortly after the Richmond case was decided, our supreme court was again asked to determine if a party was the type of contractor entitled to statutory immunity under the Act in Salyer v. Mason Tech., Inc., 690 So.2d 1183 (Miss.1997). Mason Technologies (Mason) was a foreign corporation *339 duly authorized to conduct business in Mississippi. Id. at 1183. The United States Army employed Mason as a prime contractor for renovations to a plant at the Stennis Space Center. Id. Mason subcontracted with Austin Company for certain services. Id. Thereafter, Austin in turn subcontracted with Mason for the removal of a conveyor system it was replacing. Id. On the project, Austin also subcontracted with several other companies including SCI Steelcon. Salyer, an employee of SCI, was injured while working on the project and received benefits from SCI's workers' compensation insurance carrier. Id. Later, Salyer filed a complaint against Mason charging negligence. Salyer, 690 So.2d at 1183. The Mississippi Supreme Court affirmed the circuit court's decision to grant a summary judgment in favor of Mason ruling that while Mason had no ownership interest in the project, it fell into the category of a "contractor" as contemplated by Doubleday, Nash and Falls. Id. at 1186. The Salyer court reasoned: "The critical distinctions between Boyd in Doubleday and the employers in Nash and Falls, therefore, were that Boyd, `had no ownership interest in the premises,' and `occupied the position persons of common understanding would label general or prime contractor.'" Id. at 1186 (quoting Nash, 480 So.2d at 1100). Accordingly, the court concluded: "Mason's contractual duty to customize the ammunition plant can be seen as nothing other than what persons of common understanding would label that of a general or prime contractor." Salyer, 690 So.2d at 1186.
¶ 18. Castillo argues in this case that Carmel Construction was akin to Damson Oil in Nash in that Carmel Construction's contractual duties were not of the type that persons of common understanding would classify as those of a general or prime contractor. We disagree. In fact, the record supports the opposite conclusion. Carmel Construction performed duties very much in the realm of what general contractors do. The company was established for the very function of operating as a general contractor. Randy Bryant, the president of Carmel Construction, was the general contractor. He traveled to Mississippi and hired all those necessary to erect and complete the construction of Plantation Apartments, a project owned by Gulf Coast. Bryant spent a couple of weeks on the project in Mississippi at its beginning, and he intermittently flew in from Colorado as needed to tend to the needs of the project. Bryant testified that Carmel Construction subcontracted out all of the work on the building of Plantation Apartments and that Carmel Construction did not perform any of the work itself on the project other than to occasionally employ general laborers for clean up services. He further testified that other than the payments made to the general laborers, he was the only employee on the payroll of Carmel Construction. While some prime contractors have their own crews that do much if not all the construction on a given project, other prime contractors are made up of a single person overseeing a number of sub and sub-subcontractors on a construction site. We conclude that Carmel Construction was more like Boyd Construction in Doubleday, Benchmark in Richmond, and Mason Technologies in Salyer. Carmel had no ownership interest[1] in Plantation Apartments, but its activities in relation to the construction of the apartment units were of the kind that persons of common understanding would classify as those of a general or prime contractor.

B. Piercing the Corporate Veil
¶ 19. In addition to arguing that Carmel Construction was not the "kind of contractor contemplated by the Workers' Compensation Act" as the case law describes, Castillo urges us to employ a "piercing the corporate veil" theory and *340 determine that Carmel Construction was not a prime contractor due to its "symbiotic" relationship with Gulf Coast Partners. Castillo contends that not only was Carmel Construction actually an agent of Gulf Coast Partners, rather than a separate entity, but it was also an "owner" of Gulf Coast.
¶ 20. In support of her position, Castillo refers us to North Am. Plastics Inc. v. Inland Shoe Mfg. Co., Inc., 592 F.Supp. 875 (N.D.Miss.1984). In that case, the Federal District Court for the Northern District of Mississippi enumerated several factors to consider when deciding whether the "corporate veil" should be pierced which include:
(1) The parent corporation owns all or a majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.
North Am. Plastics, 592 F.Supp. at 879.
¶ 21. Castillo maintains that the evidence before the circuit court on the motion for summary judgment established several of the above-mentioned factors. She further asserts that those factors which are not apparent from the record are unclear and raise triable issues for a jury determination. However, the district court in North Am. Plastics also referred to the general rule that "[t]he corporate veil should not be `pierced' unless the corporation exists to perpetuate a fraud or is a mere instrumentality, agent, adjunct, or sham designed to subvert the ends of justice." Id. at 878 (citing Johnson & Higgins of Miss., Inc. v. Commissioner of Ins., 321 So.2d 281, 285 (Miss.1975)). North Am. Plastics did not involve workers' compensation matters, but rather concerned the defendant's default on an open account. Id. at 876.
¶ 22. Basic law of corporations holds that "the distinct corporate identity will be maintained unless to do so would subvert the ends of justice." Johnson & Higgins of Miss., 321 So.2d at 284. In addition, the Mississippi Supreme Court has stated on more than one occasion that "piercing the veil of a subsidiary in order to deal with its parent corporation should not be lightly undertaken." Id.; Gray v. Edgewater Landing, Inc., 541 So.2d 1044, 1047 (Miss.1989); Highway Dev. Co. Inc. v. Mississippi State Highway Comm'n, 343 So.2d 477, 480 (Miss.1977). Under Mississippi law, to pierce the veil of a corporation, the party seeking to impose liability on the corporation's shareholders must demonstrate: "(a) some frustration of contractual expectations regarding the party to whom he looked for performance; (b) the flagrant disregard of corporate formalities by the defendant corporation and its principals; (c) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." Gray, 541 So.2d at 1047. Additionally, Mississippi law holds that "two or more corporations are separate and distinct entities although the same individuals are the incorporators of, or own stock, in the several corporations, and although such corporations may have the same persons as officers". Murdock Acceptance Corp. v. Adcox, 245 Miss. 151, 163, 138 So.2d 890, 895 (1962).

*341 "[T]he mere fact that one owns all the stock of the other, or substantially all, is not enough to warrant disregard, in the absence of some fraudulent purpose; nor is the fact that there was an opportunity to exercise control. Furthermore the fact that the shareholders of the two corporations are the same is not of itself sufficient to treat the two corporations as one."
Johnson & Higgins, 321 So.2d at 285.
¶ 23. There is no Mississippi case law positively applying a "pierce the corporate veil" theory in a workers' compensation matter. However, there is one instance where a parent corporation argued a "reverse piercing" theory which was rejected by our supreme court. See Index Drilling Co. v. Williams, 242 Miss. 775, 778, 137 So.2d 525, 529 (Miss.1962). In the Index Drilling case, Williams was an employee of Production, Inc., one of five corporations owned by two brothers. Id. at 526. After having received workers' compensation benefits from the corporation that employed him and from which he drew his paycheck, William filed a third-party negligence action against Index Drilling, one of the other corporations owned by the brothers which he charged was responsible for his injuries. Id. Index Drilling argued that it was immune from the lawsuit because it was not a third-party under the Mississippi Workers' Compensation Act. Id. at 528. The corporation maintained that "each of the five corporations simply constituted a department or division of the over-all enterprise. [The brothers] ... owned and operated all of them ..." Id. at 528. Index Drilling further submitted that "there was such an identity of ownership, operation, purposes and activities that each of the five ... corporations was the alter ego of the other, jointly engaged in mutual activities; that the legal fiction of corporate entities should be disregarded under the circumstances." Id. The supreme court rejected Index Drilling's argument and ruled that Williams's employer was Production, Inc. and not Index Drilling and that "[t]he related activities of these five corporations would not warrant disregard of their separate corporate entities, particularly in view of the provisions of the workers' compensation act." Index Drilling, 137 So.2d at 528.
¶ 24. This type of argument has been referred to in other jurisdictions as "reverse piercing," that is, an attempt by the corporate entities to pierce their own veils and has been rejected in several jurisdictions as it applies to workers' compensation matters. See, e.g., Sims v. Western Waste Indus., 918 S.W.2d 682 (Tex.App. 1996) (holding that a parent corporation may not assert that it is the alter ego of subsidiary or use a "reverse piercing" of the corporate veil to gain immunity from a tort action). Regarding the "piercing the corporate veil theory," at least one jurisdiction has found a place for the doctrine. See Walls v. Allen Cab Co., Inc., 903 S.W.2d 937 (Mo.Ct.App.1995) (ruling that piercing the corporate veil is a viable doctrine under workers' compensation law). A few jurisdictions have refused to permit an employee to pierce the corporate veil of the employer to obtain compensation. See Ally v. Naim, 581 So.2d 961, 962 (Fla.Dist. Ct.App.1991); Jacobson v. Buffalo Rock Shooters Supply, Inc., 278 Ill.App.3d 1084, 215 Ill.Dec. 931, 664 N.E.2d 328 (1996) (ruling that the plaintiffs failed to make a substantial showing that Buffalo Rock was a separate entity and not the alter ego of its shareholders to piece the corporate veil); Smithour v. American Dream Enter., Inc., 778 P.2d 302, 304 (Colo.App. 1989) (holding that though employer corporation failed to provide workers' compensation insurance for its employees, such was not sufficient to pierce the corporate veil to hold shareholders personally liable for workers' compensation benefits).
¶ 25. Castillo submits that Carmel Construction was a mere shell corporation and the alter ego of Gulf Coast. In support of her position, Castillo points out that Carmel Construction, Plantation Apartments and Gulf Coast are owned by the same *342 parent corporation, Carmel Companies, a Colorado business, which is primarily owned by Kalmon Zeff and is a real estate development business. Randy Bryant is the president of Carmel Construction and vice-president of Plantation Apartments. Ron Zeff is the president of Plantation Apartments and vice-president of Carmel Construction and a general partner in Gulf Coast. Bryant testified that Carmel Construction was formed primarily for the construction of Plantation Apartments. In his deposition testimony, Bryant indicated that he had nineteen years experience in the business of constructing multi-family apartments. Further, Bryant drew his salary from Carmel Companies and Carmel Construction. As to his service as president of Carmel Construction, he was responsible for the construction and project management of Plantation Apartments, in addition to creating the construction budget, awarding sub-contracts, handling purchase orders and overseeing field operations of the apartment complex project.
¶ 26. While Castillo has shown that there is a significant connection between Plantation Apartments, Gulf Coast Partners, and Carmel Construction, she has failed to establish that the formation of the separate corporate entities was for an improper purpose, that there has been some frustration of contractual expectations regarding the party to whom he looked for performance, that there has been a flagrant disregard of corporate formalities by Carmel Construction and its parent corporation, or that there was any fraud by the corporate shareholders. Despite the close relationships between these businesses, there is still nothing in the record to suggest that the formation of these separate entities was for an inappropriate purpose. In conclusion, we find that this case has not presented facts sufficient to justify piercing of the corporate veil of Carmel Construction.
¶ 27. Accordingly, we rule that Carmel Construction was a general contractor for the purposes of Mississippi's Workers' Compensation Act and is entitled to the protections afforded by the Act. Consequently, we rule that the circuit court correctly entered summary judgment in favor of Carmel Construction.

II. THE CIRCUIT COURT ERRED IN GRANTING SUMMARY JUDGMENT TO M.E.K. CONSTRUCTION AS THERE EXISTS A DISPUTED ISSUE OF FACT AS TO WHETHER RAMON CASTILLO'S EMPLOYER HAD SECURED WORKERS' COMPENSATION COVERAGE.
¶ 28. Castillo debates the conclusiveness of the evidence as to whether Diaz Construction had workers' compensation coverage and contends that summary judgment was inappropriate because factual issues in this regard are in dispute. However, attached to the affidavit of Michael Kossow, President of M.E.K. Construction, was a copy of Castillo's request for workers' compensation benefits to Liberty Mutual Ins. Co., as well as a copy of Liberty Mutual's denial of such benefits. On this issue, M.E.K. Construction, in response to Castillo's arguments on appeal, goes to great lengths in its brief to establish why the affidavit and its attachments regarding Diaz Construction's insurance coverage were admissible evidence entitled to consideration by the circuit court in its evaluation of the summary judgment motion.
¶ 29. Whether or not Diaz Construction had insurance coverage in effect at the time of Ramon Castillo's death is irrelevant. It is undisputed that M.E.K. Construction was the subcontractor who hired Diaz Construction to work on the Plantation Apartment project. Secondly, the record shows clearly that M.E.K. Construction had workers' compensation coverage at the time of Ramon Castillo's death. As stated in our analysis regarding Carmel Construction, Mississippi law holds that an injured party must move up the vertical hierarchy in seeking workers' compensation coverage if his immediate *343 employer lacks such coverage. See Crowe v. Brasfield & Gorrie Gen. Contractor, Inc., 688 So.2d 752, 754 (Miss.1996). If in fact Diaz Construction did not have insurance to compensate his wife and dependants pursuant to the terms of the Act, then they could pursue such compensation by filing a petition to controvert against M.E.K. Construction, and then Carmel Construction if M.E.K. was not properly insured. Id. Because M.E.K. Construction was a subcontractor who contracted with Diaz Construction, M.E.K. Construction was a statutory employer of Ramon Castillo and, consequently, is immune from a common law action pursuant to the exclusivity provisions of the Act as stated above. The lower court properly entered summary judgment in favor of M.E.K. Construction.

III. THE EXTENSION OF IMMUNITY FROM COMMON LIABILITY UNDER THE MISSISSIPPI WORKERS' COMPENSATION ACT SHOULD EXTEND ONLY TO THE EMPLOYER WHO ACTUALLY SECURES COVERAGE AND/OR BE LIMITED TO THE PARTIES TO THE CONTRACT OF EMPLOYMENT AND SHOULD NOT EXTEND UP THE HIERARCHY OF EMPLOYMENT CONTRACTS.
¶ 30. Here, Castillo asks us to revisit current law on the issue of whether immunity should be granted to a subcontractor or general contractor where a sub-subcontractor failed to secure coverage for the benefit of an injured employee. Though acknowledging the statutory provision in section 71-3-7 of the Mississippi Code, as amended, which provides that a contractor is required to provide compensation for the employees of its subcontractor unless the subcontractor has such coverage, Castillo takes issue with Mississippi case law which has extended this provision to require that a contractor be responsible for compensation of an injured employee of a sub-subcontractor in the event that neither the sub-subcontractor nor the subcontractor obtains workers' compensation insurance for the benefit of the injured employee. She argues: "It makes more sense for the `vertical hierarchy' to stop at the first level of contract [meaning the employer-employee contract] rather than to extend it through sub-contractor after sub-contractor." This notion, however, is in direct contravention of the legislature's directive in section 71-3-7 that a contractor provide compensation to an injured worker where the subcontractor failed to provide such compensation. By the Mississippi Supreme Court's holdings in Doubleday and more specifically Crowe, this section has been expanded to include sub-subcontractors.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE APPELLEES IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, AND LEE, JJ., CONCUR.
THOMAS, J., NOT PARTICIPATING.
NOTES
[1] Our conclusion that Carmel Construction did not have an ownership interest in Plantation Apartments is discussed in the following subsection.