# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-01240-COA

JOHN HIBBLER                                                                          APPELLANT

v.

INGALLS SHIPBUILDING SHIPYARD A/K/A                          APPELLEE
HUNTINGTON INGALLS INCORPORATED

| | |
|---|---|
| DATE OF JUDGMENT: | 07/20/2018 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ALSEE McDANIEL |
| ATTORNEY FOR APPELLEE: | RICHARD P. SALLOUM |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 12/17/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE BARNES, C.J., McCARTY AND C. WILSON, JJ.

### C. WILSON, J., FOR THE COURT:

¶1.     John Hibbler was injured in a work-related accident on September 28, 2012. Having received payment through workers' compensation, Hibbler later filed suit for damages against Huntington Ingalls Incorporated (Ingalls). Ingalls had contracted with Hibbler's employer, Avaya Government Solutions (Avaya), to install telecommunications infrastructure on a ship that Ingalls was building. Ingalls filed a motion for summary judgment, which the circuit court granted. Hibbler now appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     Hibbler worked for Avaya as a network-systems engineer. In August 2012, Hibbler and three other Avaya engineers began installing a telephone-communications system on a

helicopter-assault ship. Ingalls had contracted with the United States Navy to build the ship. Hibbler's work was to take three months and included the installation of cabling under the raised floor of the ship's communications room. According to Hibbler, Avaya worked in coordination with painters employed by a separate contractor. Hibbler and his Avaya co-workers installed cables under the raised floor in a section of the communications room during the day shift. The painting crew followed at night to paint the cables, replacing the floor decking when they were finished. Occasionally, the ship's decking was not replaced, and Hibbler and his co-workers would navigate the communications room by walking on the squared steel-floor framing.

¶3.    On September 28, 2012, Hibbler began a twelve-hour shift at 7:00 a.m. Between 5:30 and 6:30 p.m. that day, he was pulling cable line across the communications room floor when he stepped on an unsecured deck plate. The plate gave way, causing Hibbler to fall into a hole that was about three-feet deep. As a result of his accident, Hibbler injured his back and hit his head on a cabinet as he fell. He experienced dizziness.

¶4.    These events took place at the Ingalls-owned shipyard located in Pascagoula, Mississippi, where the ship was being constructed. Ingalls avers that it was the "prime contractor to the U.S. Navy" for the construction of the ship at issue.[1] Ingalls also asserts that it required all subcontractors, like Avaya, to carry workers' compensation insurance for their

---

[1] The underlying contracts between the Navy and Ingalls, and between Ingalls and Avaya, are not in the record; the only proof offered by Ingalls regarding its status as a "contractor" is contained in an affidavit executed by Ingalls's manager Steven Pierce, which is further discussed infra.

employees under the Mississippi Workers' Compensation Act (MWCA)[2] and the Longshore and Harbors Workers' Compensation Act (LHWCA)[3] until completion and final acceptance of the contractors' work. Following Hibbler's accident, Avaya's workers' compensation insurer began paying workers' compensation benefits to Hibbler under the MWCA and continued those payments through May 31, 2013. Thereafter, the insurer paid additional benefits under the LHWCA.

¶5.     On September 25, 2015, Hibbler filed a complaint against Ingalls in the Circuit Court of Jackson County, Mississippi. In his complaint, Hibbler alleged entitlement to compensatory damages and other relief against Ingalls due to Ingalls's "negligence in failing to maintain and otherwise secure the flooring upon the ship . . . ." Ingalls answered, asserting that Hibbler's "sole and exclusive remedy . . . is under any applicable workers' compensation statutes including . . . the [LHWCA] and the [MWCA]."

¶6.     After the parties conducted discovery, Ingalls filed a motion for summary judgment on May 29, 2018. Ingalls asserted that it was not liable for injuries to an independent contractor's employee arising out of performance of the contracted work. Ingalls also argued that it was immune to Hibbler's negligence suit as a "statutory employer" under the MWCA because Hibbler had already received his workers' compensation benefits through its subcontractor Avaya's workers' compensation coverage. In support of its motion, Ingalls relied on portions of Hibbler's deposition and provided the circuit court with an affidavit

---

[2] *See* Miss. Code Ann. § 71-3-7 (Supp. 2012).

[3] *See* 33 U.S.C. § 904(a) (2018).

from Steven Pierce, Ingalls's "Manager – Risk Management." In his affidavit, Pierce testified that Ingalls, as "a contractor engaged in the business of ship construction and repair," required all its subcontractors to carry workers' compensation insurance. Pierce's affidavit did not mention the particular ship on which Hibbler was injured or Avaya's contract specifically.

¶7. In response to Ingalls's motion, Hibbler asserted that Ingalls's negligence was the direct and proximate cause of his injuries. Hibbler argued that under the MWCA, his "acceptance of workers' compensation benefits [did] not affect nor preclude [his] right to sue any other party at law for such injuries."

¶8. On July 19, 2018, the circuit court held a hearing on Ingalls's motion for summary judgment. The next day, the circuit court granted Ingalls's motion, finding:

> (1) Ingalls was [Hibbler's] statutory employer at the time of the accident and is therefore immune from [Hibbler's] claims in this case by the exclusive remedy provisions of the [MWCA];
>
> (2) Ingalls is not liable for [Hibbler's] injuries because at the time of the accident, [Hibbler] was employed by [Avaya] – an independent contractor – and [Hibbler's] injuries arose out of or were intimately connected with the work Avaya contracted to perform; and
>
> (3) There is no admissible evidence as to who left the deck plate in question unsecured at the time of the accident which is an essential element of [Hibbler's] case.

Based on these findings, the court dismissed Hibbler's claims with prejudice.

¶9. Hibbler now appeals the circuit court's ruling, asserting that there is a genuine issue of material fact relating to whether Ingalls was his statutory employer under the circumstances, and whether Ingalls's employees were negligent in maintaining the ship deck

4

plates, which caused his accident and resultant injuries. Ingalls responds that, as a general contractor, it enjoys immunity under the MWCA from tort liability for Hibbler's injuries. Finding no error, we affirm.

STANDARD OF REVIEW

¶10. Appellate review of a trial court's grant or denial of a motion for summary judgment is de novo. *Adams v. Graceland Ctr. of Oxford, LLC*, 208 So. 3d 575, 579 (¶9) (Miss. 2017). Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment is proper where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." "When considering a motion for summary judgment, the deciding court must view all evidence in a light most favorable to the non-moving party." *Morton v. City of Shelby*, 984 So. 2d 323, 329 (¶10) (Miss. Ct. App. 2007). While the movant has the burden of showing that no genuine issue of material fact exists, the party opposing the motion must be diligent and "is required to set forth specific facts showing that genuine issues for trial do exist." *Richardson v. Norfolk S. Ry. Co.*, 923 So. 2d 1002, 1007 (¶8) (Miss. 2006).

DISCUSSION

I.      *Ingalls as Hibbler's Statutory Employer*

¶11. This case hinges on whether Ingalls was Hibbler's "statutory employer" under the MWCA or simply a third party outside of that law's requirements and protections. The MWCA provides that:

5

1) Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease. . . .

. . . .

(6) In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.

Miss. Code Ann. § 71-3-7(1), (6) (Rev. 2011). The MWCA further provides that:

[T]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee . . . except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee . . . may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death."

Miss. Code Ann. § 71-3-9 (Rev. 2011). In cases "where [a] subcontractor provide[s] compensation coverage to its employees pursuant to its contract with the prime contractor, the prime contractor qualifie[s] as a statutory employer and [i]s immune from a common law tort suit by the injured employee." *Salyer v. Mason Techs. Inc.*, 690 So. 2d 1183, 1184 (Miss. 1997) (citing *Doubleday v. Boyd Constr. Co.*, 418 So. 2d 823, 826-27 (Miss. 1982)); *accord Powe v. Roy Anderson Const. Co.*, 910 So. 2d 1197, 1200 (¶8) (Miss. Ct. App. 2005). As to third parties, however, "[t]he acceptance of compensation benefits from . . . an employer or insurer . . . shall not affect the right of the employee or his dependents to sue any other party at law for such injury. . . ." Miss. Code Ann. § 71-3-71 (Rev. 2011).

¶12.    Based on the record before us, we agree with the circuit court's conclusion that Ingalls was Hibbler's statutory employer under section 71-3-9 and therefore immune from Hibbler's common law tort claims. Steven Pierce's affidavit testimony, which is uncontradicted by

6

Hibbler, reflects that Ingalls is "a contractor engaged in the business of ship construction and repair" at its Pascagoula yard. Pierce's affidavit further avers that during the time Hibbler worked at the shipyard, Ingalls "required the contractors who performed work at Ingalls Shipyard to carry workers' compensation insurance to cover their own employees . . . ." While Avaya and Ingalls's contract is not in the record,[4] Hibbler specifically pled the existence of their contractual relationship, and he raises no dispute as to Avaya's contractual obligation to provide workers' compensation coverage. And to the extent that Hibbler contends that Ingalls was not a contractor in building the ship at issue, his assertion is based on his own speculation, not probative evidence sufficient to defeat summary judgment.

¶13. In support of his contention that Ingalls is not a statutory employer and is therefore subject to his claims, Hibbler relies on *Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182 (Miss. 1989), and *Falls v. Mississippi Power & Light Co.*, 477 So. 2d 254 (Miss. 1985). In those cases, our supreme court found that the defendants were not statutory employers under section 71-3-9. The *Magee* and *Falls* defendants were both right-of-way owners that had contracted with the injured plaintiffs' employers to perform work on their

---

[4] The underlying contracts would be probative of the issues here. *Cf. Monroe v. Lanco Const. Inc.*, No. 1:14cv250, 2015 WL 12564942, at *3 (S.D. Miss. 2015) (holding that defendant was entitled to summary judgment as statutory employer under the MWCA, as substantiated by language of defendant's prime contract with project owner and subcontract with plaintiff's employer). At oral argument, the parties disputed the reasons why neither the contract between the United States Navy and Ingalls, nor the contract between Ingalls and Avaya, were produced during discovery. Hibbler had propounded a general request for documents, but when Ingalls failed to produce the contracts, Hibbler never moved to compel or pursue further discovery to obtain them. Even though the barebones Pierce affidavit does not specifically address the contracts or project at issue, it nonetheless stands uncontradicted by any admissible evidence offered by Hibbler.

7

respective project sites. *Magee*, 551 So. 2d at 184; *Falls*, 477 So. 2d at 258. Because they were site owners, the defendants were not "contractors" as contemplated by section 71-3-7 and therefore were not "statutory employers" immune from suit under the MWCA. *Id*. Specifically, as owners of the sites where the injuries occurred, the defendants were not "contractors" liable under section 71-3-7(6) to cover "employees of the[ir] subcontractor." Miss. Code Ann. § 71-3-7(6); *see Magee*, 551 So. 2d at 184; *Falls*, 477 So. 2d at 258. Instead, the plaintiffs' employers were the defendants' general contractors, not subcontractors. And while the defendants thus had no obligation to pay workers' compensation benefits to their contractor's employees, they likewise were not shielded from non-MWCA claims as statutory employers. *Magee*, 551 So. 2d at 184; *Falls*, 477 So. 2d at 258.

¶14. *Magee* and *Falls* are distinguishable from the case sub judice. Here, there is no evidence in the record that suggests that Ingalls was the "owner" of the ship it was constructing, irrespective of whether Ingalls owned the shipyard itself. To the contrary, the record evidence shows that Ingalls, in building the ship at issue, "can be seen as nothing other than what persons of common understanding would label that of a general or prime contractor." *Salyer*, 690 So. 2d at 1186. Further, Ingalls hired Avaya as a subcontractor to assist in the ship's completion, and Ingalls required Avaya to provide workers' compensation coverage for its employees, consonant with the obligations set forth in section 71-3-7(6). We find no error in the circuit court's conclusion that Ingalls was Hibbler's statutory employer and thus immune from further liability under section 71-3-9.

8

## II.   *Other Grounds for Summary Judgment*

¶15.   Even if Ingalls were not Hibbler's statutory employer and thus shielded from further liability, the circuit court nonetheless properly entered summary judgment as to Hibbler's claims.  The circuit court concluded that Ingalls was entitled to summary judgment because at the time of his accident, Hibbler was employed by Avaya, an independent contractor, and his injuries were intimately connected with the work Avaya contracted with Ingalls to perform.  *See* Miss. Code Ann. § 11-1-66 (Supp. 2004); *see also Ratcliff v. Ga. Pac. Corp.*, 916 So. 2d 546, 546 (¶10) (Miss. Ct. App. 2005) (stating that "the owner has no duty to protect the independent contractor or his employees from dangers arising out of or intimately connected with the work to be performed by the independent contractor").[5]  Additionally, the circuit court determined that Hibbler offered "no admissible evidence as to who left the deck plate in question unsecured at the time of the accident," leaving an essential element of Hibbler's case wholly unsupported.  *E.g.*, *Galloway v. The Travelers Ins. Co.*, 515 So. 2d 678, 683 (Miss. 1987) ("The plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case . . . .") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

¶16.   Hibbler contends that the circuit court erred in these findings because there is a

---

[5] Hibbler does not separately address on appeal the circuit court's holding that Ingalls owed Hibbler no duty to protect him from risks or injury intimately connected with the work Avaya, as an independent contractor, was contracted to perform.  To the extent Hibbler challenges the circuit court's ruling on this basis, we note that he cites no contrary authority and offers no argument beyond his contentions related to evidence of negligence and res ipsa loquitur, which is addressed infra.

genuine issue of fact as to whether Ingalls employees were negligent in maintaining the floor deck plates. Hibbler also contends that "Ingalls arguably had the right of control and management over the removing and securing of the deck plates" at issue, such that the doctrine of res ipsa loquitur applies to salvage his claims. We disagree on both points.

¶17. To succeed in a claim of negligence, Hibbler must show "(1) [t]he existence of a duty . . . to conform to a specific standard of conduct for the protection of others against an unreasonable risk of injury; (2) [a] failure to conform to such standard . . . ; (3) [t]he breach of such duty by the defendant was a proximate cause of the plaintiff's injury; [and] (4) injury . . . ." *Burnham v. Tabb*, 508 So. 2d 1072, 1074 (Miss. 1987) (citing W. Page Keeton et al., Prosser & Keeton on the Law of Torts § 41, at 263-72 (5th ed. 1984)). Where "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is proper. *Galloway*, 515 So. 2d at 683.

¶18. Here, as the circuit court found, Hibbler failed to adduce any admissible evidence that Ingalls either owed him a duty to maintain the deck plates or breached any duty that was owed. To the contrary, there is no record evidence indicating who left the deck plate at issue unsecured, and Hibbler only offered speculation as to who did so:

> Q. You said there were some shipyard workers in there that you might have their names as well.
>
> A. They actually . . . like I told you from the beginning, I called them ship lot workers.
>
> Q. They could have been contractors as well?
>
> A. I'm sure they were . . . .

If anything, the record suggests that the painters who worked in the communications room at night were, like Hibbler and his Avaya coworkers, employed not by Ingalls but by other subcontractors. Moreover, by the time Hibbler's accident occurred, Avaya's employees had been working in the communications room for more than ten hours, and there is no evidence that anyone else had control of that area during their shift. Simply, Hibbler provided no evidence at the summary-judgment stage to support his contention that Ingalls owed him a duty in maintaining the deck plates. Because Hibbler cannot establish all the required elements of his negligence claim, the circuit court did not err in granting summary judgment on this basis.

¶19. Finally, Hibbler's assertion that Ingalls had the "right of control and management over the removing and securing of the deck plates," such that the doctrine of res ispa loquitur applies, likewise misses the mark. As a threshold matter, Hibbler did not raise this theory in the circuit court and thus cannot raise it for the first time on appeal. *Alexander v. Daniel*, 904 So. 2d 172, 183 (¶26) (Miss. 2005). Regardless, proper application of res ispa loquitur "requires four elements: 1) the matter must be within the common knowledge of laymen; 2) the instrumentality causing the damage must be under the exclusive control of the defendant; 3) the occurrence must be such as in the ordinary course of things would not happen if those in control of the instrumentality used proper care; and 4) the occurrence must not be due to any voluntary act on the part of the plaintiff." *Brown v. Baptist Mem'l Hosp.-DeSoto Inc.*, 806 So. 2d 1131, 1135 (¶17) (Miss. 2002) (citing *Coleman v. Rice*, 706 So. 2d 696, 698 (Miss. 1997)). As discussed supra, Hibbler cannot show that Ingalls had exclusive

11

control of the flooring deck plates, and res ipsa loquitur is inapposite to salvage Hibbler's claims.

CONCLUSION

¶20. We find no error in the circuit court's finding that Ingalls was Hibbler's statutory employer. As Hibbler's statutory employer, Ingalls is immune from further liability under section 71-3-9. To the extent it is raised on appeal, the circuit court did not err in concluding that Ingalls was entitled to summary judgment because Hibbler's injuries were intimately connected with the work that Avaya contracted with Ingalls to perform. Nor did the circuit court err in concluding that Hibbler lacked admissible evidence to support his negligence claim. Accordingly, we affirm the grant of summary judgment.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR.**